# Lutz *v.* Royal Insurance Company of Liverpool, Appellant.

205　　159
28 SC　605

*Insurance—Fire insurance—Dangerous explosive—Custom of trade.*

A firm engaged in the business of dealing in photograph supplies had a place of business in the central part of a large city where they rented certain floors of a building. On the building was a policy of fire insurance which provided that the entire policy should be void, " if (any usage or custom of trade to the contrary notwithstanding) there be kept, used or allowed on the above described premises gunpowder . . . . or other explosives." In addition to this printed condition there was the typewritten provision: " Privilege to be occupied as at present, or for purposes not more hazardous." It was customary for dealers in photographic supplies in this city to put up and sell in small packages a certain flash light powder. It was not customary for dealers to manufacture it on the premises where sold. There was an explosion in the building, and this was immediately followed by a fire which destroyed the building. It appeared that the firm in question not only dealt in and sold the flash light powder, but also manufactured it in the portion of the building which they occupied. There was no direct evidence that the insurance company knew of the manufacture of flash light powder on the premises when the policy was issued. The evidence showed that the powder was a high explosive. The evidence in favor of the insurance company was practically undisputed. *Held*, in an action by the owners of the building to recover on the insurance policy that the court should have given binding instructions for the defendant.

Argued Jan. 26, 1903. Appeal, No. 299, Jan. T., 1902, by defendant, from judgment of C. P. No. 2, Phila. Co., June T., 1900, No. 492, on verdict for plaintiff in case of Francis A. R. Lutz, J. Edward Lutz, Julia A. Klein, Ulysses S. Lutz, Charles A. Lutz and Maria A. Burling v. Royal Insurance Company of Liverpool. Before MITCHELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before WILTBANK, J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $6,818. Defendant appealed.

*Errors assigned* among others were answers to defendant's

second and third points quoted in the opinion of the Supreme Court.

*Henry P. Brown*, with him *Thomas W. Barlow*, for appellant. —There is no case which holds that because a dealer in an article sold it as an article of trade or merchandise, an insurance company that insured the stock and building was presumed to know that he manufactured it.

The appellant was not bound to know that the McCollin Company was manufacturing the powder simply because it was customary and usual for others in the same line of business to keep it for sale : Heron v. Phœnix Mut. Fire Ins. Co., 180 Pa. 257 ; Birmingham Fire Ins. Co. v. Kroegher, 83 Pa. 64 ; Lancaster Fire Ins. Co. v. Lenheim & Co., 89 Pa. 497 ; Bentley v. Lumbermen's Ins. Co., 191 Pa. 276.

*S. Edwin Megargee*, with him *E. Hunn Hanson*, for appellees. —When the policy was executed part of the building was occupied by McCollin & Company, whose necessary and essential business it was not only to keep, but to make, the flash light powder.  The risk assumed by the insurance company was that of a building so occupied : Citizens' Ins. Co. v. McLaughlin, 53 Pa. 485 ; Lancaster Silver Plate Co. v. Fire Ins. Co., 170 Pa. 151 ; Bentley v. Lumbermen's Ins. Co., 191 Pa. 276.

Opinion by Mr. Justice Dean, March 9, 1903 :

The policy issued by defendant to plaintiffs on which this suit was brought, is dated January 4, 1900, and indemnifies plaintiffs in sum of $6,000 for one year against loss by fire on building No. 123 South 11th street in Philadelphia.  It was a renewal of a one-year policy on same building issued January 4, 1899.  After the first policy was issued, in July, 1899, plaintiffs let three of the floors to the " Thomas H. McCollin Company," a company engaged in the business of dealing in photographic supplies, and that company continued as tenants down to March 22, 1900, at which date there was an explosion, immediately followed by a fire, which destroyed the building.  Charles Warren, who was an employee of the McCollin Company, and mixed explosives for that company, was on the fifth floor at work at the time of the explosion and was killed.  Among other arti-

cles used in the photograph business and sold by the company was a flash light powder, called Blitz Pulver, a high explosive. The company not only dealt in and sold this powder, but also manufactured it on the floor occupied by it. For the greater part, the policy was on the usual printed form of the company and among other printed conditions is the following: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto shall be void, . . . . if (any usage or custom of trade to the contrary notwithstanding) there be kept, used or allowed on the above described premises . . . . gunpowder exceeding 25 pounds in quantity, naphtha, nitroglycerine or other explosives," etc. In addition to this printed condition, there was the typewritten provision: "Privilege to be occupied as at present or for purposes not more hazardous." It was customary for dealers in photographic supplies in Philadelphia to put up and sell in small packages the flash light powder called Blitz Pulver; it was not customary for dealers to manufacture it on the premises where sold.

The insurance company refused to pay the loss, on the ground that the conditions quoted had been violated, and thereupon this suit was brought. At the trial but few other material facts appeared than those already stated. The defendant requested the court to charge the jury in its second and third written points as follows:

"If the jury believe that an explosive was manufactured on the premises in question at the time of the explosion, this was contrary to the contract of insurance and avoided the policy, and there can be no recovery thereon. *Answer:* For answer to that point I refer you to my general charge."

"Under all the evidence in the case the verdict of the jury must be for defendant. *Answer:* That point I refuse."

Although the learned judge of the court below left it as a question of fact for the jury to find whether the McCollin Company was at the time manufacturing the flash light powder, the evidence that it was, was practically undisputed, and he says: "It would seem that there could be no question" about it; he really might very properly have instructed them, that the fact was established. So we shall treat it as a fact, the same as if found by the jury. The court's reference to its general charge on the subject embraced in the second point is thus stated:

"If you find that the ordinary conduct of the business in which the Thomas H. McCollin Company was engaged at the time the risk was accepted by the insurance company involved the manufacture of flash light powder, and if on the first point under my instructions you find in favor of the plaintiff, then your verdict should be for the plaintiff."

"If the ordinary course of the business, however, was that it involved dealing in flash light powder and did not involve its manufacture, then I instruct you that an explosive was kept, used, or allowed on the premises contrary to the provisions of the policy, and that in such case your verdict should be for the defendant."

This, although not a peremptory negative or affirmative, is a very clear answer, fully responsive to the points; there was a verdict for plaintiffs and defendant appeals and complains of the answers to the two points as error. Counsel for appellees here, rely on Citizens Ins. Co. v. McLaughlin, 53 Pa. 485, and Lancaster Silver Plate Co. v. Fire Ins. Co., 170 Pa. 151, for the law vindicating this instruction. We think there is a clear distinction in the facts between those cases and this. In both cases cited, one a leather factory, the other a silver plate factory, the prohibited articles, benzine and gasoline, were in constant use in the manufacture of the product of the factories and absolutely necessary in small quantities to carrying on the business. We held that if the use was a necessary one in carrying on the business, it must be presumed that the intent of the parties was to insure the subject of the contract as it then existed, and as it would continue to be during the life of the policy, notwithstanding the printed condition. In this case, as the learned judge said to the jury, there was no "direct evidence" that the insurance company knew that the McCollin Company was manufacturing its own flash light powder on the premises when the policy was issued. Under the evidence it might fairly be presumed that the photograph supply company dealt in that article and kept it in small quantities for sale on the premises. But as there is no presumption from the nature of the business and the subject of the contract, that the insurance company knew it was also manufactured on the premises, the burden was on plaintiffs to establish by satisfactory evidence that the company actually did know. It might be presumed to know the ordinary methods

and customs of such dealers, and just here comes in the question, what was the custom? Not one dealer or manufacturer, and a number were called, testified that it was a necessary or usual part of the business of a dealer in photographic supplies to manufacture flash powder on the premises where sold; on the contrary, the evidence was that it was neither usual nor necessary, the custom of dealers being to buy it of manufacturers, whose factories were generally located in the suburbs of the city, in small quantities, then put up and sell it in small half ounce packages. Not a single witness except McCollin testified it was customary for the dealer to manufacture the powder, and the substance of his testimony is, that it was his custom to do it. The testimony wholly failed to show such custom, hence there could be no inference that the insurance company knew of a custom which did not exist. Nor is there any evidence, direct or indirect, that it knew as a fact at the date of the contract, the McCollin Company manufactured the powder upon the premises.

Was then the building at the date of the explosion and fire occupied "for a purpose more hazardous" than at the date of the policy? As before noticed from the subject of the contract, it would be fairly presumed that the insurance company knew or ought to have known that a dealer in photographic supplies kept on the premises and sold small quantities of flash light powder, but there is no presumption and no evidence that the insurer knew he manufactured it there. Then did the use of the premises for manufacture increase the hazard, within the typewritten condition of the policy? Flash light powder is composed of quite a number of chemical materials, which when compounded in certain proportions, it is testified by chemists, become a high explosive. It scarcely needed further proof, that the bringing together in one room of a number of materials which separately were comparatively harmless, yet together made a high explosive greatly increasing the peril of fire from explosion, though further evidence on that point by manufacturers and others was given. One manufacturer, Buchanan, testified that he had stopped manufacturing it altogether because there were too many coroner's juries to keep it up in his establishment. There was other testimony to the same effect and there was none to the contrary. The case was well and

carefully tried on the theory adopted by the learned judge of the court, but in our view, there was not sufficient evidence to support it. The defendant's second and third points should have been affirmed without qualification. The judgment is therefore reversed and judgment entered for defendant.