M. W. Fraim and A. Rosenstein, trading as Lancaster Silver Plate Co., v. National Fire Ins. Co., of Hartford, Connecticut, Appellant.

*Insurance—Fire insurance—Stipulation as to inflammable substance.*

A policy of fire insurance on a building used for silver plating, contained the stipulation "this entire policy shall be void if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises. . . . gasoline." Plaintiffs used gasoline in their plating process, and for cleaning tools. They kept a barrel of it in an uninsured building about fifteen feet from factory. When gasoline was needed it was drawn from a barrel through a spigot and carried into the factory, where it was emptied into a kettle holding three or four gallons. On the night when the factory was destroyed by fire, there was no gasoline in the kettle, and the gasoline was not the cause of the fire. *Held*, that it was proper to admit evidence that gasoline was necessary in carrying on the business of silver plating, and that it was so used when the policy was issued, and continued to be used up to the date of the fire. It was also proper to refuse to charge that if the

plaintiffs used gasoline on the premises during the life of the policy, the policy by its terms became void, and there could be no recovery.

In a contract of insurance it is the intent of the parties to insure the subject of insurance as it necessarily is, and must continue to be, during the life of the policy.

*Evidence—Expert—Insurance.*

In an action upon a policy of fire insurance on a silver plating establishment, where the insurance company defends on the ground that gasoline was kept on the premises in violation of a prohibition of the policy, and plaintiff claims that the gasoline was necessary in silver plating, a witness for defendant is incompetent to testify as an expert as to the effect of the use of gasoline in cleansing in the process of silver plating, when the witness has already stated that he had never seen gasoline so used, and that for the same purpose he had always used, and had always seen used, other material.

Plaintiffs were not bound to show that the use of gasoline was of such vital importance to the conduct of their business that it could not be ignored, and that the necessity for its use must have been absolute in order to sustain their averment that its use was necessary in silver plating. An instruction that the jury must find that the use of gasoline was necessary, was as favorable to defendant as the law required.

*Practice, C. P.—Practice, S. C.—Trial—Remarks of judge—Request for instruction.*

The Supreme Court will not reverse a judgment on a verdict because the trial judge when refusing a nonsuit expressed an opinion upon the evidence, where there is nothing to show that the jury heard the judge's remarks, or that the remarks affected the verdict, and counsel did not request the judge to instruct the jury to disregard the remarks.

Argued May 24, 1895. Appeal, No. 377, Jan. T., 1895, by defendant, from judgment of C. P. Lancaster Co., Jan. T., 1894, No. 23, on verdict for plaintiffs. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before LIVINGSTON, P. J.

At the trial it appeared that the policy contained a stipulation prohibiting the use of gasoline on the premises insured. It appeared that plaintiffs kept a barrel of gasoline in a small building not insured about fifteen feet from their factory where they conducted the business of silverplating. The gasoline was drawn by a spigot into the factory, and emptied into a kettle containing three or four gallons. The gasoline was used in the process of plating, and in cleaning tools and molds.

On the night of the fire which destroyed the factory there was no gasoline in the kettle, and it did not appear that the gasoline had any connection with the fire.

When Herman Gantert, a witness for plaintiffs, was on the stand, plaintiffs offered to prove by his testimony that the Lancaster Silver Plate Co. was manufacturing and silver plating cane and umbrella handles of metal; that in this manufactory prior to the issuing of this policy, and during its life, they used gasoline for cleansing grease off their manufactured articles prior to plating them, and that such use was necessary, ordinary, efficient and usual in this and like establishments doing a similar business. The purpose being that, inasmuch as it had been developed by the cross-examination of the defendant that gasoline was used on these premises, and as the defendant resisted the payment of this loss on the ground such use voided the policy, it was competent for the plaintiffs to show that such use was necessary and usual in the business insured, plaintiffs had a right to so use it under the written or type written portions of the policy.

" Objected to by the defendant : (1) The offer did not support the purpose ; (2) no question or issue was raised in the case with respect to the kind of business that was being carried on by the plaintiff, nor under the contract could such issue be raised ; (3) the purpose of the testimony is immaterial, irrelevant, incompetent and inadmissible.

Admitted.   Bill sealed. [6]

" Q. Was or was not gasoline used ?   A. Yes, sir.   Q. For what purpose ?   A. Cleaning handles, taking the grease off. Q. How long had it been in use there at the time you left in June ?   A. It had been in use before I got there and after I left there ; all the time I was there it was used.   Q. Where was the gasoline kept ?   A. Kept outside of the building on Louis Pfaeffle's yard.   Q. Adjoining ?   A. Yes, sir.   Q. In what quantities was it used on the premises ?   A. I don't know. I never paid attention.   A gallon, I guess.   Q. Was or was not this use of gasoline for cleansing grease off these handles useful and necessary for that purpose ?   A. Yes, sir."

Plaintiffs offered to prove that such use of gasoline as was made upon these premises was the usual, ordinary and necessary use of gasoline in the business of silver plating, which was

the business of this company; that it was used at the time this policy was issued, had been used for several years prior thereto, and continued to be used without change until the time of the fire.

This was objected to by defendant, for the reason it is immaterial and irrelevant; the contract between the parties has been reduced to writing and is written in the policy, and can be in no way altered, corrected or reformed in this proceeding so far as it has proceeded.

Admitted. Bill sealed. [7]

The testimony admitted was as follows:

" Q. Was or was not the use of gasoline for the purpose you have described, the cleansing of grease from off the handles, the ordinary method of doing that work? A. Yes, sir; also for cleansing molds, which is enumerated among the machinery. Q. Was or was not it usual in your establishment and like establishments to use gasoline for this purpose?

Objected to by defendant.

" Q. Was or was not this use of gasoline such as obtained in your factory necessary to the cleansing of handles and of molds? A. Yes, sir."

John H. Carrow, defendant's witness, being on the stand:

Defendant proposed to ask him whether gasoline is ordinarily used in the silver plating business in the manner in which it has been testified to by the plaintiffs.

The Court: He must confine himself to some knowledge.

Objected to by plaintiffs. Disallowed and bill sealed. [8]

Defendant proposed to ask, witness having qualified as an expert in the silver plating business, what in his opinion would be the effect of the use of gasoline upon the articles, gasoline being used in the manner in which plaintiffs and their witnesses have testified to its use.

Objected to by plaintiffs. Disallowed and bill sealed. [9]

Defendant asked the court to enter a compulsory nonsuit in this case; because the policy contained the entire contract between the parties; it provided that the defendant insured the plaintiffs against loss by fire, on engine and boiler with their connections; machinery of all kinds, shafting, pulleys, belting, hangers, tools, dynamos, furnaces and kettles with their foundations, gas fixtures, gas, steam, heat and water pipes, with

their attachments, molds, fans, vats, cinques, furniture, bins, partitions, all contained in their three story brick, tin roof building, occupied by insured, situated at the rear of No. 2 West King street, Lancaster, Pa., fronting on Mifflin street. The policy also provided the entire policy should be void, if without an agreement indorsed on the policy, gasoline be kept, used or allowed on the premises; and the uncontradicted testimony was that gasoline was used and allowed on the premises habitually, and that there was no agreement for its use indorsed on the policy; therefore, the contract became void by the act of the plaintiffs, and there can be no recovery.

The Court: "As presented this case shows there was no gasoline kept on these premises; the policy is, therefore, not voided on account of the keeping of gasoline on the premises. In a case which I had here yesterday, it is said that if insured shall keep or have in any place on the insured premises, petroleum, naptha, benzine, benzole, gasoline, etc., then and in every such case this policy shall be void.

"They kept none on the premises, but with proper precaution the insured took and used gasoline on the premises insured for the purpose of cleaning machinery, etc. The Supreme Court held the words 'keep' and 'have' were intended to prevent the permanent and habitual storage of the prohibited articles; and to take them on the premises for the purpose of cleaning machinery was not embraced within the meaning of the words. Then, there are other cases. The McLaughlin case I referred to yesterday; the printing office case, and others; and another case, in which a clause excluding a company from liability for losses occasioned by an explosion of any kind was said did not relieve it from liability where the fire resulted from the explosion of a kerosene lamp in the building. And I find from the Legal and Insurance Reporter, volume IX., that to take benzine on the premises for the purpose of cleaning machinery is not to 'keep' and 'have' it there, which words are intended to prevent the permanent and habitual storage of articles. In that, this case differs from the case yesterday. In the case yesterday, in my judgment, permission was clearly granted by the policy itself; if not clearly granted in this case, the evidence as presented shows it was (as stated in the first case I have referred to) taken there for the purpose

of cleaning machinery, with proper precaution. So I shall have to deny a judgment of nonsuit." [12]

The court charged in part as follows :

"[We say to you if this policy (as we think it does) does not cover this use of gasoline in this building for the purpose for which it was used at the time taken; if it should not do that then it will be for you to say whether under our refusal to enter this judgment of nonsuit, whether the gasoline that was used, being used at the time this insurance was effected, continued to be used in the same manner throughout the continuance of this policy and up to the fire. If it was brought into this establishment—because there is no evidence of it being kept there; it was carried in, I think they said, in a gallon measure as they wanted it for use, and used in the manner you have heard stated,—if you believe from the evidence it was taken in there carefully and cautiously with proper precautions and used in the same way; and that it was necessary to use it in the manner it was used in cleaning their material; and in such case whether this policy covers it or not, the plaintiffs are entitled to a verdict for the amount of the policy of insurance. There is no question here as to the policy.

"We say to you, if you find from the evidence this material was necessary, and in use when the policy was effected, and continued in use in the same way during the continuance of the policy and up to the time of the fire; that it was properly, carefully and cautiously used, then your verdict should be for the plaintiffs for the amount claimed.]" [13]

Defendant's points were as follows :

"1. The plaintiffs accepted the policy in suit with the express stipulation therein contained that ' this entire policy unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if (any usage or custom of the trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the above described premises benzine, benzole, dynamite, ether, fireworks, gasoline.' The uncontradicted testimony being that gasoline was used or allowed habitually on the premises, the verdict must be for the defendant. *Answer :* Refused. [1]

"2. The true interpretation of the policy in suit is that the defendant insured the plaintiffs against loss by fire, ' On engine

and boiler, with their connections, machinery of all kinds, shafting, pulleys, belting, hangers, tools, dynamos, furnaces and kettles, with their foundations, gas fixtures, gas, steam heat and water pipes with their attachments, moulds, fans, vats, cinques, furniture, bins and partitions,' except that the entire policy of insurance should be void 'if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the premises, benzine, benzole, dynamite, ether, fireworks, gasoline.' And the uncontradicted testimony being that gasoline was used habitually on the premises, the verdict must be for the defendant. *Answer :* Refused. [2]

" 3. Under the terms of the policy in suit gasoline could not be used unless permission for the use of the same be indorsed on the policy—and there being no such indorsement, and gasoline having been used, the verdict must be for the defendant. *Answer :* Refused. [3]

" 4. It being admitted that the plaintiffs used gasoline on the premises during the life of the policy, the policy by its terms became void, and there can be no recovery. *Answer :* Refused. [4]

" 5. The plaintiffs having, according to the uncontradicted testimony, habitually used gasoline during the life of the policy in the manufacture of silver plated ware, the policy by its terms became void, and there can be no recovery. *Answer :* Refused. [5]

" 6. If the court declines to charge as above, then the court is respectfully requested to charge as follows :

" A condition of the policy in suit being that the policy shall be void, 'if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used or allowed on the premises gasoline ;' and the uncontradicted testimony being that gasoline was used habitually, the plaintiffs cannot recover unless they show that gasoline was necessary and essential in conducting their business, and of such vital importance to the conduct of their business that its use could not be ignored. If any other non-prohibited article could be used in place of gasoline, it was the duty of plaintiffs to use such article; and if they preferred to use gasoline and did use gasoline, the policy by its terms became void, and there can be no recovery. *Answer :* Refused. [10]

" 7. On the whole case the verdict must be for the defendant. *Answer:* Refused." [11]

Verdict and judgment for plaintiffs for $1,601.25. Defendant appealed.

*Errors assigned* were (1–5, 10–13) instructions as above, quoting them; (6–9) rulings on evidence, quoting the bill of exceptions.

*John W. Appel* of *Appel & Appel, D. C. Herr* and *C. H. Bergner* with him, for appellant.—The contract is simply that of the insurance of certain specified articles, and no reason can be given why all the terms of that contract relative to the insurance should not be binding upon both parties.

Actions on insurance policies stand on same footing as other litigation: Welsh v. London Assn. Co., 151 Pa. 618.

Proof of custom or usage of trade or manufacture will not be allowed to overcome the express stipulation against the use of gasoline and other hazardous articles, even where there is no clause in the policy expressly excluding the proof of such custom or usage: Birmingham Fire Ins. Co. v. Kroegher, 83 Pa. 64; Lancaster Fire Ins. Co. v. Lenheim & Co., 89 Pa. 497; Pittsburg Ins. Co. v. Frazee, 107 Pa. 521 ; White v. West. Ass., 4 Cent. Rep. 723; Steinbach v. Ins. Co., 18 Wall. (U. S.), 183 ; Whitmarsh v. Oak Fire Ins., 2 Allen (Mass.), 581; Westfall v. Hudson River Fire Ins. Co., 12 N. Y. 289.

It is clear that in insurance cases where the use of a prohibited article has been justified, it was because the particular business was insured or privileged under the policy, and the prohibited article was shown to be necessarily and ordinarily used in the business: Harper v. Albany Ins. Co., 17 N. Y. 196; Harper v. N. Y. City Ins. Co., 22 N. Y. 442; Citizens' Ins. Co. v. McLaughlin, 53 Pa. 487; White v. West. Assurance Co., 4 Cent. Rep. 723.

The court all through the case lost sight of the fact that gasoline was habitually used, not for cleaning machinery but for cleaning handles, etc. The use of gasoline for cleaning molds was only incidental and exceptional. It will not be disputed that the principal use of gasoline was to clean handles, not machinery. The judge entirely ignores that fact and in the

face of uncontradicted testimony made the case hang upon the question of the plaintiffs using gasoline to clean machinery and doing it with precaution.

*J. Hay Brown, W. U. Hensel* with him, for appellees.—The insurance of a particular kind of business or manufacture includes all that is necessary, essential and customary in conducting such a business or carrying on such manufacture, notwithstanding the special prohibition of such article.

The insurance of a particular kind of manufacture permits the use of all such articles as are ordinarily employed in that manufacture, although the use or keeping of such articles be prohibited by the printed terms of the policy.

A long line of decisions, well approved, in this and other states, establishes a principle that the insurance of a specified class of manufactures permits the use of all such articles as are ordinarily employed in that manufacture, even though the use or keeping of such articles be prohibited by the printed portions of the policy : Steinbach v. Lafayette Fire Ins. Co., 54 N. Y. 90 ; Mead v. Ins. Co., 7 N. Y. 530 ; Putnam v. Com. Ins. Co., 23 Alb. L. J. 239 ; Buchanan v. Exchange Ins. Co., 61 N. Y. 26 ; Wheeler v. American etc. Ins. Co., Ct. of App. (Mo.) 8 Ins. L. J. 318 ; Haney v. Dorchester Fire Ins. Co., 12 Gray (Mass.), 545 ; Wall v. Howard Ins. Co., 14 Barb. (N. Y.) 383 ; Bryant v. Poughkeepsie Mut. Ins. Co., 21 Barb. (N. Y.) 154 ; New York Equitable Ins. Co. v. Langdon, 6 Wend. (N. Y.) 623 ; Collins v. Farmville Ins. Co., 8 Ins. L. J. 453 ; Phœnix Ins. Co. v. Slaughter, 12 Wall. (U. S.) 404 ; Aurora Fire Ins. v. Eddy, 55 Ill. 222 ; Reaper City Fire Ins. v. Jones, 62 Ill. 458 ; Wash. Mut. Ins. v. Merchants & Manuf. Ins. Co., 5 Ohio, 450 ; Hall v. Ins. Co. of N. A., 58 N. Y. 292 ; Wood on Fire Ins., 2d ed. vol. 1, p. 161 ; Pindar v. Kings County Fire Ins., 36 N. Y. 648.

In this case, however, not only was the use of gasoline ordinary and necessary to the business of silverplating, which was generally insured by the written portions of the policy, but it was necessary to the proper use, preservation and protection of the " moulds," which were part of the especially insured machinery set out in the written parts of the policy : Langdon v. Equitable Ins. Co., 1 Hall (N. Y.), 226 ; Duncan v. Sun Fire

Ins. Co., 6 Wend. (N. Y.) 488; Franklin etc. Ins. Co. v. Brock, 57 Pa. 74; Hayward v. North West. Ins. Co., 19 Abb. Pr. (N. Y.) 116; 1 May on Insurance, 3d ed., p. 454; Jefferson Ins. Co. v. Cotheal, 7 Wend. 72; Goss v. Citizens' Ins. Co., 18 La. An. 97; Benedict v. Ocean Ins. Co., 31 N. Y. 389; Phœnix Ins. Co. v. Taylor, 5 Minn. 393; Citizens' Ins. Co. v. McLaughlin, 53 Pa. 485; Cushman v. North Western Ins. Co., 34 Me. 487; Moore v. Protection Ins. Co., 29 Me. 97; Leggett v. Ætna Ins. Co., 10 Rich. Law (S. C.), 202; Archer v. Merchants' Manuf. Ins. Co., 43 Mo. 434; James v. Lycoming Fire Ins. Co., 4 Cliff. Circuit Ct. (Mass.) 272; Leeds v. Mechanics' Ins. Co., 8 N. Y. 351; Hernandez v. Sun Mut. Ins. Co., 6 Blatch. (U. S.) 317; Forbes v. American Mut. Fire Ins. Co., 15 Gray, Mass. 249; Delonguemare v. Tradesmen's Ins. Co., 2 Hall, 589; Lounsbury v. Protection Ins. Co., 8 Conn. 459; Sims v. State Ins. Co., 47 Mo. 54.

Any other conclusion than this would have a tendency to seriously interfere with ordinary course of trade and business: Kentucky Mut. Ins. Co. v. Jenks, 5 Ind. 96; Ind. Mut. Fire Ins. Co. v. Connor, 5 Ind. 170; Shaw v. Robberds, 6 Ad. & E. 75; Washington Fire Ins. Co. v. Davison, 30 Md. 91; Pelly v. Royal Exchange Assurance Co., 1 Burr. 341; Birmingham Fire Ins. Co. v. Kroegher, 83 Pa. 64; Whitmarsh v. Charter Oak Fire Ins. Co., 2 Allen, 581; Cobb v. Ins. Co. of N. A., 11 Kansas, 93; Western Assn. Co. v. Rector, 85 Ky. 294; Hoffman v. Ætna Ins. Co., 32 N. Y. 405; Reynolds v. Commerce Ins. Co., 47 N. Y. 597; Blackett v. Assurance Co., 2 C. & J. (Eng. Ex.) 244; Chandler v. St. Paul F. & M. Ins. Co., 21 Minn. 85.

Opinion by Mr. Justice Dean, July 18, 1895:

On January 21, 1893, plaintiffs were carrying on the business of gold, silver and nickel plating in a three story brick building in Lancaster city; at that date, they took from defendant a policy of insurance against fire in the sum of $1,500 for the term of one year on all their tools, machinery, gas fixtures and water pipes in the building. One of the printed conditions of the policy read thus:

" This entire policy, unless otherwise provided by agreement endorsed hereon, or added hereto, shall be void, if, (any usage or custom of trade or manufacture to the contrary notwith-

standing) there be kept, used or allowed, on the above described premises, benzine, benzole, dynamite, ether, gasoline, greek fire, gunpowder exceeding twenty five pounds in quantity, naphtha, nitro-glycerine, or other explosives."

The property insured was destroyed by fire on the night of September 7, 1893; the loss largely exceeded the amount insured. The plaintiffs used gasoline in their plating process, and also for the cleaning of tools and molds; it was not, however, kept or stored in the building where the property was insured, but in another building about fifteen feet distant; the quantity kept there seldom exceeded one barrel; when needed in the factory it was drawn from the barrel through a spigot, and carried to the third story of the factory and emptied into an open kettle, which had a capacity of three to four gallons; from the kettle it was taken as needed for use in cleansing tools and molds. On the night of the fire there was no gasoline in the kettle, all put in that day having been used. After the fire the barrel of gasoline in the other building was found undisturbed; so the fire did not originate from the gasoline in either the kettle in the factory, or barrel in the outbuilding.

The insurance company refused to pay the loss, alleging the policy was void because of the violation of the condition by the insured in using and allowing to be used gasoline in the building where the machinery was insured. Thereupon plaintiffs brought suit. At the trial there was practically no dispute as to the facts as we have stated them; the learned judge of the court below, however, submitted the evidence to the jury to find: 1. Was the use of gasoline necessary in carrying on the business of silver plating and cleaning tools? 2. Was gasoline so used when the policy was issued, and was this use continued up to the date of the fire? 3. Was it properly and carefully used? If they answered these three interrogatories in the affirmative, then they were directed to find a verdict for plaintiff in the amount of the policy. There was a verdict for plaintiff, and judgment having been entered thereon the defendant brings this appeal, preferring thirteen assignments of error, which it is conceded may be considered as raising really but three questions:

1. What interpretation is to be given the words " This entire policy . . . . shall be void if (any usage or custom of trade or

manufacture to the contrary notwithstanding), there be kept, used or allowed on the above described premises . . . . gasoline?"

The premises described is the three story brick building used as a factory; the building in which the barrel of gasoline was stored was not insured, nor was it within any prohibition of the policy.

As the finding of the jury was against defendant on the facts, if there were no error in the admission or rejection of evidence, then, as appellee's counsel argues, " the case presents a pure question of the construction of a contract."

We assume that to constitute a contract there must be the assent of two minds to the same thing in the same sense. When defendant issued and plaintiffs accepted the policy, on what sort of property did plaintiffs want to be indemnified, and what did defendant know it was insuring? Defendant viewed the machinery and tools in the building then being operated in the work of gold, silver and nickel plating, and by the express terms of its policy its indemnity is to the " Lancaster Silver Plate Company." Bringing the parties together at the factory, for the purpose of contracting for insurance on the machinery and tools in the building to be used in gold, silver and nickel plating, what must we assume defendant knew? Certainly, that it knew what was necessary to carrying on the business. We cannot assume that a party honestly accepting another's money as a consideration for the faithful performance of a very important contract, was wholly ignorant of the subject of the contract. Plaintiffs were engaged in gold, silver and nickel plating; in carrying on this business it is well known, certain materials, chemicals and combinations of chemicals are necessary, and without them it could not be carried on; the jury have found as a fact, from the evidence, that the small quantity of gasoline used was necessary to the operation of these works, and that it was in use at the date of the policy; if necessary, then the cessation of its use meant the stoppage of the business, or so crippling it that it must prove unprofitable. Is it a reasonable interpretation of the contract to suppose either party intended that result? To conclude they did not, is only to assume the insured were not idiots and the insurers were not cheats.

The general rule, deducible from the text books and adjudicated cases, as to such prohibitions, is, that it is the intent of the parties to insure the subject of insurance as it necessarily is and must continue to be during the life of the policy. And, as is said in Stacey v. Ins. Co., 2 W. & S. 506, "Policies are to be construed largely according to the intention of the parties, and for the indemnity of the assured and the advancement of trade. Facts and circumstances dehors the instrument may be proved in order to discover the intention of the parties." So, where the printed portions of a policy prohibited the use of extra hazardous material, necessarily used in operating the machinery, or business insured, and the written or inserted description of the subject of insurance did not prohibit them, it was held, the use of the hazardous material did not avoid the policy: Ins. Co. v. Brock, 57 Pa. 74; Hayward v. Ins. Co., 19 Abb. Pr. 116; Mears v. Ins. Co., 92 Pa. 15; Ins. Co. v. McLaughlin, 53 Pa. 485.

In the case last cited, the insurance was upon a leather factory; the printed condition prohibited the use of benzole; plaintiff proved the use of this material was essential to successfully operate his factory; the benzole, as the gasoline in this case, was kept in a shed some distance from the building insured, and was carried from the shed to the main building in a bucket when used; a fire originated from the benzole in the bucket after it had been carried into the main building, and destroyed the property covered by the policy. This court, by WOODWARD, C. J., said: "But did they mean to exclude it from the factory as an element or agent in the conduct of the business? To assume that they did, in the absence of language to that effect, would be to assume that they expected the business to stop or to be carried on out of the usual mode." That case is a stronger one against the insurers than the one before us, only because the essential fact is an obvious inference from the contract itself. That policy expressly granted to the insured the privilege of keeping five barrels of benzole in the shed, but expressly stipulated the shed was not insured. The inference necessarily was the company knew the benzole kept in the shed was for use in the factory; then following this up with proof that benzole was ordinarily used in the manufacture of leather, plaintiff claimed the manifest intent of the

contract was that it should not be avoided by such use of benzole. In the case before us, nothing is said about the storage of gasoline in the outbuilding, but on the evidence, dehors the contract, it was submitted to the jury to find whether the use of gasoline was necessary to the business of silver plating, and whether it was in use at the date of the policy; and they found both facts affirmatively; then follows the only warrantable inference, that the insurers knew when they delivered their policy the acceptance of it was not to be as disastrous to the insured as the destruction of their property by fire; because, on the fact found, that the use of gasoline was necessary to the successful carrying on of the business, and if the policy prohibited such use, then the insured would have offered him the alternative of stopping business, or taking the risk of fire. No one believes an insurance company would tender such a contract or a sane man accept it; such a choice was not intended by either party to the policy. It would be just as probable a supposition that the company would have tendered to a silver plate manufacturer a policy containing a stipulation avoiding it, if the assured kept or used silver plate upon the premises.

This disposes of the first five assignments of error, which complain of the interpretation of the contract by the court below.

2. The sixth and seventh assignments are to the admission of testimony offered by plaintiff to prove that the use of a small quantity of gasoline was necessary in the business of silver plating; that at the date of the policy, and for several years before, it had been so used by plaintiffs, and that such use was continued without change down to the time of the fire. The appellant argues that this was error, because the insurance was not of machinery and tools to be used in any particular business; was simply an insurance upon the property in a particular building, and as part of the contract the use of an extra hazardous material was prohibited. As the objection assumed defendant's interpretation of the contract to be the true one, which it was not, as we have already noticed, the objection was properly overruled. The written contract itself shows the defendant insured to a silver plating company its boilers, machinery and tools in its manufactory. It must be assumed the insurers knew for what purpose the machinery

was then being used, and for what purpose it would be used; just as would be assumed, if they had taken a policy on the machinery in a flour mill, they knew it was to be used in the manufacture of flour.

The eighth and ninth assignments of error are to the rejection of a part of the testimony of John H. Carrow, a witness examined as an expert by defendant. It was proposed to ask the witness what effect gasoline would have when used in cleansing in the process of silver plating; the witness had already stated that he had never seen gasoline so used; that for the same purposes he had always used and had always seen used concentrated lye; that he knew gasoline was a product of petroleum. Clearly, the witness had not the knowledge that warranted him in testifying as an expert to the effect of gasoline, and there was no error in sustaining the objection. He did testify that the use of gasoline, as proven by plaintiff, was not necessary in silver plating, and that he had never heard of it before; this was the most his knowledge warranted.

3. The defendant's tenth assignment is based on the refusal of the court to instruct the jury that it was incumbent on the plaintiffs to show that the use of gasoline was of such vital importance to the conduct of their business that it could not be ignored, and if any non-prohibited article could have been used in place of gasoline, it was the duty of plaintiffs to use such article.

We do not think such a heavy burden as this was imposed on plaintiff; in effect, the point asked the court to say the necessity must have been absolute. This is not the rule laid down in any of this class of cases. In Hall v. Ins. Co., 58 N. Y. 292, the policy was on a photographer's establishment; it was held to cover property destroyed, which was necessarily and ordinarily used in that business, although, by the printed conditions of the policy, the use of some of the articles was prohibited. There are but few manufactured articles which could not be produced by more than one process; that one, however, may be properly deemed necessary which is in ordinary use by the trade for the attainment of the result. To this point tended plaintiff's evidence, and the instruction to the jury, that they must find the use of gasoline was necessary, was as favorable to defendant as the law required; the court was

not bound to instruct that the necessity must be an absolute one; that is, if silver plating could be done by any other process, plaintiffs were bound to adopt it, or their policy was void.

As to the remarks of the court to counsel when motion for compulsory nonsuit was refused, even if an expression of opinion on the evidence, it does not follow the jury heard them, and it certainly will not be presumed their verdict was controlled by what was not addressed to the jury. If counsel for defendant feared their cause would be prejudiced by what the judge said to them and not to the jury, they should have asked him to instruct the jury to disregard it.

There is nothing in any of the assignments requiring further notice. We are convinced that the case was tried without substantial error, and that the judgment is just; it is affirmed.