DUVAL LAUNDRY COMPANY, INC., v. ROBERT B. REIF.

177 So. 726.
Division B.
Opinion Filed November 23, 1937.
Rehearing Denied January 8, 1938.

*Milam, McIlvaine & Milam,* for Plaintiff in Error;
*Evan Evans,* for Defendant in Error.

CHAPMAN, J.—We have here for review on several assignments of error a judgment for the sum of $5,000.00 in behalf of plaintiff below rendered in the Circuit Court of Duval County against the Duval Laundry Company, Inc., on the following allegations of an amended declaration:

"That at all times hereinafter mentioned, the defendant was in possession of and was operating and managing a laundry situated in the City of Jacksonville, Duval County, Florida, known as Duval Laundry; that for more than 15 years prior to the 15th day of March, 1935, plaintiff had been employed by the defendant in its said business as, to-

wit, laundry driver; that on said last mentioned date plaintiff's employment by defendant was terminated by the defendant, and plaintiff was then dismissed by the defendant from its employment.

"And plaintiff alleges that on said date, to-wit, the said 15th day of March, 1935, the defendant wrongfully, unlawfully and maliciously caused, procured and induced numerous other laundries in said city, to-wit, the Eagle Laundry, the New York Laundry, The American Laundry, The Snow White Laundry and others to refuse employment to this plaintiff; that after the commission by defendant of said wrong, this plaintiff sought employment with the said laundries hereinbefore mentioned and was by them, by reason of the aforesaid wrong so committed by defendant, refused employment; that thereby plaintiff was rendered unable to procure employment in his said occupation and will continue so to be for a long time, to-wit, permanently, and plaintiff was thereby damaged in his said business in the sum of $25,000.00."

Defendant below directed a demurrer to the amended declaration and the same upon hearing was by an order of the court below overruled and denied, under date of January 7, 1936, and this adverse ruling is assigned as error. There was no error in so ruling by the lower court. Chipley v. Atkinson, 23 Fla. 206, 1 Sou. Rep. 934, 11 Am. St. Rep. 367. In Dade Enterprises, Inc., v. Wometco Theaters, Inc., 119 Fla. 70, text p. 73, 160 Sou. Rep. 209, this Court said:

"The weight of modern authority holds that interference with any contracts amounts to a tort. That rule has been consistently adhered to in this State since the decision of this Court in Chipley v. Atkinson, 23 Fla. 206, 1 Sou. Rep. 934, 11 Am. St. Rep. 367. In such cases the injured party has an action against the party in default upon the contract,

but he is not limited thereto. He may also maintain an action against the wrongdoer who induced such breach. 4 Page on Contracts, Section 2426, page 4298.

"If one maliciously interferes with a contract between two persons, and induces one of them to breach the contract to the injury of the other, the injured party may maintain an action against the wrongdoer, and where the act was intentional, malice will be inferred. To do intentionally that which is calculated in the ordinary course of events to damage and which, in fact, does damage another person in his property or trade, is malicious in the law, and is actionable if it is done without just cause or excuse. Carmen v. Fox Film Corporation, 258 Fed. 703; E. L. Husting Co. v. Coca-Cola Co., 205 Wis. 356, 237 N. W. Rep. 85."

See London Guarantee & Accident Co. v. Horn, 206 Ill. 493, 69 N. E. Rep. 526. 15 R. C. L. pages 13-14:

"13. ENGLISH DOCTRINE.—In England the Doctrine of Lumley v. Gye was accepted by the court of appeal in 1881. Doubts as to the soundness of the decision were expressed by some of the lords in a later case; but these doubts have since been dissipated. In a case decided in 1880, Judge Brett said that the decision of the majority in Lumley v. Gye held that 'wherever a man does an act which in law and in fact is a wrongful act, and such an act as may, as a natural and probable consequence of it, produce injury to another, and which in the particular case does produce such an injury, an action on the case will lie.' And again he said: 'Merely to persuade a person to break his contract may not be wrongful in law or fact. But, if the persuasion be used for the indirect purpose of injuring the plaintiff, or of benefiting the defendant at the expense of the plaintiff, it is a malicious act, which is in law and in fact a wrong act, and therefore a wrongful act, and therefore an actionable act if injury ensues from it.' * * *"

"14. GENERAL RULE IN UNITED STATES.—As contracts of employees and the relation of master and servant created thereby never stood in any different position in the United States from other contracts, the doctrine of liability for inducing a breach of contract by a servant, once it gained a foothold, soon extended in the majority of jurisdictions to all classes of breach of contract, it being determined that there is no distinction in principle between enticing away the plaintiff's servant and inducing a third person to break any other contract between him and the plaintiff. In them, therefore, obtains the broad principle approved in England that a person who induces a party to a contract to break it, intending thereby to injure another person or to get a benefit for himself, commits an actionable wrong unless there is sufficient justification for the interference. The theory of this doctrine is that a party to a contract has a property right therein which a third person has no more right maliciously to deprive him of, or injure him in, than he would to injure his property real or personal, and that therefore such an injury amounts to a tort for which the injured party may seek damages. * * *"

Defendant filed a plea of not guilty to the amended declaration and upon the issues tendered the suit was tried.

The order of the court below denying the defendant's motion for a directed verdict and the order denying the motion for a new trial each raise the question of the legal sufficiency of the plaintiff's evidence and the two motions can be considered under one assignment.

There was no evidence offered to sustain the material allegations of the amended declaration other than plaintiff's testimony. It is admitted by the parties that the plaintiff for a number of years worked for defendant in the capacity and at the work as described until March 15, 1935, when the plaintiff testified he was dismissed and Mr. P. M. Bur-

roughs and W. J. Watson, connected with the defendant company, testified. plaintiff was not dismissed, but voluntarily declined to remain with defendant. The parties agree further that plaintiff did not work for defendant after March 15, 1935, and no conflicts appear for whom plaintiff worked after this day. There is a sharp conflict in the evidence of the plaintiff and the officers of the defendant about plaintiff's employment with laundries in Jacksonville which it is alleged the defendant maliciously induced other laundries not to employ plaintiff (other than at Duval Laundry Company). In paragraph six of agreement between the parties it is provided:

"SIXTH. Said Driver agrees that he will not at any time, while in the employ of said Company, either directly or indirectly divulge or make known to any person, whatever, the names or addresses of customers of said Company, who were the customers, patrons or agents of said Company at the time he entered the employ of said Company. That for one year immediately after his discharge by said Company or his quitting the employment of said Company, he will not either directly or indirectly, make known or divulge the names or addresses of any of the customers, patrons or agents of the said Company to any person whatsoever, and that for the space of one year after his discharge or quitting the employment of said Company, he will not either directly or indirectly, either for himself or any other person, firm, company or corporation, call upon, solicit, divert, take away or attempt to solicit, divert or take away any of the custom, business or patronage of such Company upon whom he called or whom he solicited, or to whom he catered or became acquainted with at the time of his employment with said Company or with whom he became acquainted or on whom he called or to whom he catered after his employment with said Company."

Considering the conflicting testimony adduced, the lower court was without authority at law to pursue a course other than hold that the conflict in evidence was a jury question. See: Gravette v. Turner, 77 Fla. 311, text pages 314-16, 81 Sou. Rep. 476.

"In directing a verdict the court is governed practically by the same rules that are applicable in demurrer to evidence. 89 U. S. 116.

"A party in moving for a directed verdict admits not only the facts stated in the evidence adduced, but also admits every conclusion favorable to the adverse party that a jury might fairly and reasonably infer from the evidence. Gunn v. City of Jacksonville, 67 Fla. 40, 64 South. Rep. 435.

"When the facts are not in dispute, and the evidence, with all the inferences that a jury may lawfully deduce from it, does not, as matter of law, have a tendency to establish the cause of action alleged, the judge may direct a verdict for the defendant. But the court should never direct a verdict for one party unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof or facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail, and not primarily the views of the judge. In an action for negligence where there is any substantial testimony from which the jury could find the issues in favor of the plaintiff, a peremptory charge for the defendant should not be given. A case should not be taken from the jury by directing a verdict for the defendant on the evidence, unless the conclusion follows as a matter of law that

no recovery can be lawfully had upon any view taken of facts that the evidence tends to establish. The credibility and probative force of conflicting testimony should not be determined on a motion for a directed verdict. The duty devolving upon the court in reference to directing a verdict on the evidence may become, in many cases, one of delicacy, and it should be cautiously exercised. Gunn v. City of Jacksonville, *supra;* Logan Coal & Supply Co. v. Hasty, 68 Fla. 539, 67 South. Rep. 72; Davis v. Drummond, 68 Fla. 471, 67 South. Rep. 99; Poore v. Starr Piano Co., 68 Fla. 425, 67 South. Rep. 99; King v. Cooney-Eckstein Co., 66 Fla. 246, 63 South. Rep. 659; Hammond v. Jacksonville Electric Co., 66 Fla. 145, 63 South. Rep. 709; Starks v. Sawyer, 56 Fla. 596, 47 South. Rep. 513."

Assignments 4, 5, 6, 7, 8 and 9 are each predicated on charges of the court upon the law of the case. It is the law of Florida that in reviewing instructions by a court to a jury upon the trial of the cause it is the duty of an appellate court not to consider one single instruction as given as error, but to consider all instructions assigned as error in the light of the entire charge as given as was said in the case of Lewis v. State, 55 Fla. 54, text page 63, 45 Sou. Rep. 998:

It is settled law in this court that in passing upon a single instruction or charge it should be considered in connection with all other instructions and charges bearing on the same subject, and if, when thus considered, the law appears to have been fairly presented to the jury, as assignment predicated upon the giving of such instruction or charge must fail, unless under all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and authorities therein cited; Davis v. State,

54 Fla. 34, 44 South. Rep. 757; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Cross v. Aby, decided here at this term."

The record shows that the lower court instructed the jury at the request of counsel for the parties and of its own volition gave other instructions. We have reviewed the pleadings, evidence, and charges of the court to the jury and fail to find reversible error. See Section 4499 C. G. L., 2812 R. G. S.

Assignment number six is based on alleged improper language used by counsel for the plaintiff in his argument before the jury and found on pages 51 and 52 of the record:

"Evan T. Evans, in his argument to the jury stated to the jury it was apparent the defendant had blacklisted the plaintiff with other laundries, that it was wrong to blacklist his employee. A man who worked for a laundry as driver undoubtedly acquired a following of his own. It represented his customers rather than his employers. It follows, therefore, that it would be advantageous for the laundries to cooperate with each other in not giving employment to a driver who had terminated his employment with another laundry. They would thereby protect themselves against loss of customers through another laundry hiring their drivers. It is apparent that such is what happened in this case, and that these other laundries acceded to Mr. Burroughs' request that they not hire the plaintiff because they might some day find themselves in the same boat."

When counsel for defendant asked for a ruling by the lower court in the use of the challenged language the court said:

"THE COURT: I will settle that on the law. What the evidence shows here is wholly committed to your care. You heard the testimony and the evidence in this case and

you will determine the facts on that testimony. That is my comment on that one. Now, read the next one.

"THE REPORTER: 'That there was an agreement between the laundries not to employ the plaintiff.'

"THE COURT: Gentlemen, I will decide the law here. These counsel representing these parties are both able men and you have heard from one of them and you will hear from another lawyer now. You will decide all questions of facts.

"To which ruling of the Court the defendant excepted and excepted to the failure of the Court to properly instruct the jury to disregard any arguments of counsel in reference to an alleged blacklisting or in reference to any reciprocity agreement between the laundries of Jacksonville not to employ discharged employees, which exception was duly noted."

Counsel for plaintiff used language while addressing the jury, viz.:

"Mr. Evan T. Evans stated in his argument to the jury that a man who worked for a laundry as driver undoubtedly acquired a following of his own. It represented his customers rather than his employers. It follows, therefore, that it would be advantageous for the laundries to cooperate with each other in not giving employment to a driver who had terminated his employment with another laundry. They would thereby protect themselves against loss of customers through another laundry hiring their drivers. It is apparent that such is what happened in this case, and that these other laundries acceded to Mr. Burroughs' request that they may not hire the plaintiff because they might some day find themselves in the same boat. Whereupon, the defendant's counsel excepted to said arguments of counsel for the plaintiff in the following words: 'If the Court

please, defendant protests and moves the Court to charge the jury that there is no issue in this case of any agreement written or otherwise, or in any pleading in this case joined and we object to any such argument about any such agreement between the laundries in Jacksonville.'

"Whereupon the Court made the following ruling:

" 'The Court: Gentlemen: I am not going to express my opinion about any question of facts. Gentlemen, as I told you before, the attorneys in this case have a right to argue this case and they have a right to argue all inferences that they draw from the evidence. But, as I said to you before, the argument of counsel is not evidence nor is any inference that may be drawn from the evidence in this case but it is argument of counsel and, representing their clients in his case, as they have a right to do, I tell you again, you. are the sole judges of the facts in this case, and I haven't any right to express any opinion about it and I do not do so. Go ahead.'

" 'Mr. McIlvaine: Note our exceptions, please sir.

"The Court: Note exceptions."

The lower court not only was cautious as to his remarks in the presence of the jury but exerted every possible effort to give the parties a fair and impartial trial.

One of the grounds of the motion for a new trial is that the amount of the verdict as found by the jury is excessive. The evidence shows the plaintiff had employment until March 15, 1935, and on June 14, 1935, filed this suit. The activities of the defendant in the "wrongful, unlawful, and malicious inducement of refusal of employment of the laundries" named occurred between these dates. It is a reasonable deduction that the $5,000 verdict rendered by the jury was to punish the defendant in preventing plaintiff from obtaining work with other laundries and in so doing

have access to his customers established over the years. He was receiving approximately $150.00 per month prior to March 15, 1935. Some few months later he obtained work for the Superior Laundry and received about $8.00 per week. There is evidence in the record justifying the findings of the jury that the defendant prevented plaintiff from obtaining employment with other laundries. It is impossible to reconcile the amount of the verdict with the evidence. Could the jury, as reasonable men, from the evidence adduced find a verdict in the sum of $5,000.00? We do not think so. It cannot be overlooked that the plaintiff suffered substantial losses due to the intentional action of the defendant, but these losses cannot approach the findings of the jury. If the plaintiff below within thirty days after going down of the mandate in this cause files a remittitur in the sum of $4,000.00 the judgment will stand affirmed in the sum of $1,000.00, otherwise the judgment appealed from will be reversed and a new trial granted.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.