**NAT C. HUGHS, JR., by his next friend and father, Nat C. Hughs, v. MIAMI COCA COLA BOTTLING COMPANY, a Florida corporation.**

19 So. (2nd) 862                                    June Term, 1944
December 5, 1944                                 Special Division A

*E. F. P. Brigham* and *L. J. Cushman,* for appellants.

*McKay, Dixon & DeJarnette,* for appellee.

SEBRING, J.:

Nat C. Hughs, Jr., a minor ten' years of age, by next friend, sued the Miami Coca Cola Bottling Company to recover damages for injuries suffered by him when an unopened bottle of coca cola exploded while in his physical possession. The charge in the declaration is that the defendant carelessly and negligently bottled and placed on the general market for sale a bottle of coca cola which had been so highly and so dangerously charged with carbonated water and carbonic acid gas that the bottle exploded in the hands of the plaintiff while handled by him in an ordinary, prudent and careful manner.

In support of the declaration the plaintiff offered testimony that in April 1942 one Shanen owned and operated the Magic City Grocery Company in the Southwest section of Miami. Mr. and Mrs. Hughs were regular customers at the store. Shanen carried coca cola for resale packed in cardboard cartons containing six bottles each. All such packaged coca cola was purchased from Miami Coca Cola Bottling Company, and was delivered by the bottler to the grocer on Monday, Thursday and Saturday of each week, between nine and ten o'clock in the forenoon. Delivery was made from the bottling plant by motor truck, the colored helper on the truck bringing the coca colas already packaged in six-bottle cartons from the truck into the store by means of a wheel barrow. At the direction of the grocer the packaged bottles were stacked by the employee of the Miami Coca Cola Bottling

Company on the floor up against the cash counter in the store, eight to ten cartons high. Stacked in that location they were not near a refrigerator, stove or any other agency that would produce a change in temperature of the beverage. As the grocer enjoyed a brisk trade in the beverage, all old stock was virtually exhausted each time a new delivery was made. When purchasers in the store bought packaged coca colas they helped themselves from the pile by the cash counter. When customers ordered coca colas by telephone the clerk in the store who handled grocery orders would take the cartons from the pile and place them with the groceries for delivery.

In April 1942 Shanen made grocery deliveries on phone orders, over a trade territory of approximately one by one and one-half miles in area. Deliveries were made by means of a panel body auto truck operated by a delivery boy. No deliveries were made on single orders; a great many orders were in the truck each time it left the store. When grocery orders were received for outside delivery the groceries would be packed in separate boxes by one of the store employees and placed in a convenient place in the store to await a truck-load for the delivery boy. If cartoned coca colas were included in the order the cartons would be taken from the stack by the cash register and placed with the grocery orders for delivery to the customer. When the delivery boy was ready to go out on his route he would first load the boxes containing the grocery orders into the truck and then return for the coca colas.

Mrs. Hughs placed a week-end grocery order with Shanen on April 3, 1942, at about three o'clock in the afternoon. Included in the order was one carton of coca cola. The delivery truck from Magic City Grocery Company arrived at her home about an hour after she had placed the order. The delivery boy first brought from the truck to the kitchen of the Hughs home such fragile items as eggs and the carton of coca cola. He then brought into the kitchen the heavier articles ordered. Mrs. Hughs met the delivery boy at the door and took the packaged coca colas from him. She immediately placed the carton on the floor in a corner of the

kitchen by her ice box. In that location it was not subject to any increase or decrease in temperature beyond that common to the rest of the house. After dinner that evening Mrs. Hughs removed five bottles of coca cola from the carton for consumption, taking the bottles out of the carton one at a time. She left the carton on the floor with the one unopened bottle in it. The next morning (April 4, 1942) the carton containing the unopened bottle of coca cola still remained at the spot where she had placed it the day before.

On the morning of April 4, 1942, Mr. and Mrs. Hughs were making preparations to move from Miami to Griffin, Georgia. With this in view, Mr. Hughs was in the house engaged in packing dishes, blankets, bedding and other household articles in boxes to ship. At about 10:45 of that morning Mrs. Hughs left the house to go to a beauty parlor a few blocks from the home. Before leaving the house she gave her son permission to open a bottle of coca cola provided he would share it with his younger brother. Upon receiving permission the son, who is the plaintiff here, went to the kitchen and lifted the remaining bottle of coca cola from the carton on the floor. As plaintiff walked across the room with the unopened bottle in his hand it exploded with considerable violence and pieces of glass were blown into plaintiff's face causing injury to his eye.

Briefly stated, this is the testimony offered by plaintiff in behalf of his case. At the conclusion of the testimony the trial judge, on motion, directed a verdict for the defendant. From this ruling and the judgment entered thereon this appeal is taken. The question is whether the granting of the motion for directed verdict constituted reversible error.

Upon a motion for directed verdict made at the close of the plaintiff's case the evidence given on behalf of the plaintiff must be considered as true. Dempsey-Vanderbilt Hotel v. Huisman, 153 Fla. 800, 15 So. (2nd) 903. For the purpose of the motion the moving party admits not only the facts adduced, but every conclusion favorable to his adversary fairly and reasonably inferable therefrom. Florida Motor Lines, Inc. v. Bradley, 121 Fla. 591, 164 So. 360; Talley v. McCain, 128 Fla. 418, 174 So. 841; Russell v. Atlantic Coast

Line R. Co., 129 Fla. 535, 176 So. 778; Hastings v. Taylor, 130 Fla. 249, 177 So. 621; Duval Laundry Co. v. Reif, 130 Fla. 276, 177 So. 726; Fain v. Cartwright, 132 Fla. .855, 182 So. 302; Carter v. Florida Power & Light Co., 138 Fla. 220, 189 So. 705; Smith v. Burdines, Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115. But when there is an absence of all evidence to establish liability, and nothing from which liability may be fairly and reasonably inferred, the motion for directed verdict should be granted. Sec. 54.17 Florida Statutes, 1941; Crandall, Florida Common Law Practice, pp. 305, 306, Sec. 208, and cases there cited.

There is no direct proof in the record of negligence on the part of The Miami Coca Cola Bottling Company. The plaintiff concedes such fact, but submits that this is a case the facts of which call for the application of the rule res ipsa loquitur, under which direct proof by plaintiff of active negligence is not necessary to require of the defendant explanation or rebuttal.

Some of the courts of the land have applied the rule res ipsa loquitur to cases in which exploding beverage bottles have been involved, and have held the bottler liable in damages even though the agency causing the injury was not in his possession or control at the time of the accident. See Payne v. Rome Coca Cola Bottling Co., 10 Ga. App. 762, 73 S. E. 1087; Benkendorfer v. Garrett (Tex.) 143 S. W. 2nd 1020; Bradley v. Conway Springs Bottling Co., 154 Kan. 282, 118 P. 2d 601; Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S. W. 497, 39 A.L.R. 1001; Coca-Cola Bottling Works v. Shelton, 214 Ky. 118, 282 S. W. 778; Grant v. Graham Chero-Cola Bottling Co., 176 N. C. 256, 97 S. E. 27, 18 NCCA 869, 4 A.L.R. 1090; Auzenne v. Gulf Public Service Co. (La.) 181 So. 54. But so far as we have been able to find from a study of the decisions, no court has ever held that recovery may be had in such cases, under the res ipsa loquitur doctrine, without an affirmative showing on the part of the plaintiff that after the bottle left the possession of the bottler it was not subjected to any unusual atmospheric changes or changes in temperature, or that it was not handled improperly up to the time of the explosion. See Payne v. Rome Coca Cola Bottling

Co. supra; Auzenne v. Gulf Public Service Co., supra; Benkendorfer v. Garrett, supra; Stolle v. Anheuser-Busch, supra; Lanza v. DeRidder Coca Cola Bottling Co., (La.) 3 So. 2nd 217; Ruffin v. Coca Cola Bottling Co., 311 Mass. 514, 42 N.E. 2nd 259.

The record in this case shows that after all packaged coca cola purchased by Magic City Grocery Company for resale in six-bottle cartons left the possession of the Miami Coca Cola Bottling Company the cartons were stacked eight to ten high by the cash counter in the store of the grocery company. Undoubtedly, every customer who left the store was required to pass in close proximity to this pile of packaged coca colas as he went by the cash counter. That everyone who came in the store had access to the cartons, and that many customers actually handled them, or some of them, is perfectly evident from the fact that persons who purchased coca colas were allowed to serve themselves without help from the store employees, and that the trade in cartoned coca cola was brisk that the stock had to be replenished three times a week. For aught that appears to the contrary, the bottle which exploded and caused injury to the plaintiff might easily have been handled improperly while stacked in the store by the cash counter. The testimony is absolutely devoid of proof as to what happened to the carton of coca colas ordered by Mrs. Hughs from the time it left the Magic City Grocery until it was delivered to the Hughs' home by truck. The proof does not negative the fact that the coca colas might have been improperly handled in the Hughs home during the process of packing and moving dishes and other houshold articles in which Mr. Hughs was then engaged. In the state of the record it cannot be said that there is such proof that the bottle was not handled improperly in the store, or by the delivery boy, or in the home, after it left the hands of the manufacturer, as will call for explanation or rebuttal on the part of the defendant. Because of the failure of such proof in the record the rule res ipsa loquitur would not be available in any event. We are relieved of the necessity, therefore, of determining whether the res ipsa loquitur rule is applicable in cases where the agency causing the injury is

out of the possession and control of the defendant at the time of the injury.

In view of the conclusion that we have reached, other questions raised on this appeal become immaterial.

The judgment appealed from is affirmed.

It is so ordered.

BUFORD, C. J., TERRELL and CHAPMAN, JJ., concur.