## DIESBOURG v. HAZEL–ATLAS GLASS CO.

No. 9849.

United States Court of Appeals
Third Circuit.

Argued May 5, 1949.

Decided May 25, 1949.

As Amended June 13, 1949.

Harold Scott Baile, Philadelphia, Pa. (Pepper, Bodine, Stokes & Hamilton, Philadelphia, Pa., on the brief), for appellant.

Joseph Head, Jr., Philadelphia, Pa. (John B. Martin, Philadelphia, Pa., Duane,

Morris & Heckscher, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and Mc-LAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal by the defendant from a judgment in favor of the plaintiff in a personal injury case. Plaintiff, the proprietor of a filling station in Florida, was injured when he endeavored to remove the cap from a bottle containing some cleaning fluid which he was about to use in the course of his business. The bottle had been made by the defendant in Ohio and shipped to a manufacturing concern in New Jersey. There it was filled with cleaning fluid which found its way into the filling station of the plaintiff's predecessor in business, and was part of the stock in trade which plaintiff took over when he purchased the filling station. We do not know when the bottle was manufactured, when it was filled with the cleaning fluid, or when it came to rest on the shelves of the Florida filling station.

▇▇▇ The case is in federal court on diversity grounds only. We, therefore, look to the Pennsylvania law to guide us. Since, in this case, we deal with foreign operative facts we, of course, look to the Pennsylvania rules of conflict of laws. Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1620, 85 L.Ed. 1477. In a case involving a foreign tort, Pennsylvania adopts the usual rule of reference and looks to the place of wrong for the rules to determine liability.[1] Our reference then is to Florida tort law and we apply the Florida decisions insofar as they give us any help with the problems to be settled. Otherwise, we find the Florida law as best we can "from the materials at hand."

We turn, then, to the propositions advanced by the defendant as reasons for reversal.

▇▇▇ 1. Defendant says that it is not liable because there is no privity between it and the plaintiff. It acknowledges the existence of the well known case of MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696 Ann.Cas.1916C, 440, but says that while that decision may be applicable to an automobile wheel, it is not applicable to a glass bottle. The defendant misapprehends what has been going on in tort law since that case was decided. Judge Cardozo, in the MacPherson opinion, gathered up the batch of exceptions to the old rule of non-liability which talked in terms of "inherently dangerous," "imminently dangerous," "eminently dangerous," and so on, and restated them as a modern rule of law in terms of duty. It was a landmark decision and was almost immediately followed. The principle found expression in Section 395 of the Restatement of Torts, and has recently been enunciated in a broad and thorough fashion by the Supreme Court of Massachusetts which, for some time, held back from the full acceptance of the growing doctrine.[2] We find nothing in the Florida cases to indicate any lack of acceptance of what is now regarded as the modern rule.[3] Our conclusion upon this point is against the defendant.

▇▇▇ 2. Defendant complains that he was refused an instruction to the jury that the standard of care for the defendant "is to use those methods and procedures which are ordinarily adopted in the profession or trade * * *." The Judge admitted testimony as to what precautions those in the trade took to guard against defects in the product. But he charged the jury in general terms of liability for want of due care under the circumstances, thus leaving to them the question whether the defendant,

---

[1] Restatement, Conflict of Laws, Pa. Annot. § 379 (1936). See the discussion of this question in Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1948, 166 F.2d 908, 910.

[2] See the notable discussion of the problem by Lummus, J. in Carter v. Yardley & Co., Ltd., 1946, 319 Mass. 92, 64 N.E.2d 693, 164 A.L.R. 569.

[3] See Starke Coca-Cola Bottling Co. v. Carrington, 1947, 159 Fla. 718, 32 So.2d 583; Hughs v. Miami Coca-Cola Bottling Co., 1944, 155 Fla. 299, 19 So.2d 862.

assuming that it had followed standard practices, was nevertheless negligent.

In this the Trial Judge was right. The law on this question was summed up a few years ago by Francis H. Bohlen.[4] He put the matter as follows: "It is universally held that, while evidence may be given as to the customary manner in which a particular business is usually carried on, this is merely to inform the jury as to the practices in the business, such a business custom no matter how universal does not establish the standard of care to·which those who carry it on must conform." He called attention to the exception to this·rule in the case of physicians and surgeons who are " * * * only required to exercise that professional skill which can be expected of physicians or surgeons in the same sort of locality as that in which the services are rendered."[5]

The defendant presses the language in certain Pennsylvania decisions which seem to sustain the position that adherence to usual commercial practice is sufficient to free one from the charge of negligence.[6] It may be doubted whether these statements fully represent Pennsylvania law.[7]

But even if the language referred to does represent Pennsylvania law, it does not control this case. The proposition under discussion is part of the substantive tort law and concerns the standard of conduct to which an actor must conform if he is not to be held liable for injuries his conduct has inflicted. One could make argument in this instance for referring that matter either to Florida, the place of wrong, or to Ohio. The theory upon which reference might be made to Ohio is that the standard for the liability-creating character of the actor's conduct has been defined by its law.[8] Ohio comes into it, it will be remembered, because the bottles were made in Ohio. Alternatively, the matter could be referred to Florida law, since Florida is where the plaintiff was hurt. Both Ohio law and Florida law, however, show adherence to the general rule enunciated in the quotation from Professor Bohlen above.[9]

■ 3. The defendant says there was no proof of negligence. If it is right in this, it is entitled to judgment because a count for breach of implied warranty was withdrawn before the case was submitted to the jury. We think, however, there was

---

[4] Bohlen, Some Recent Decisions on Tort Liability, 4 Tulane L.Rev. 378 (1930).

[5] Id. at 379.

[6] Appellant relies particularly upon Titus v. Bradford B. & K. R. Co., 1890, 136 Pa. 618, 20 A. 517, 518, 20 Am.St.Rep. 944, which announces the rule that "the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business * * *"; and Sweeney v. Blue Anchor Beverage Co., 1937, 325 Pa.·216, 220, 189 A. 331, 333, in which the Court said: "Plaintiff did not show that the defendant failed to follow the common usage of the bottling business in securing bottles sufficiently strong. Usage is a factor in the measurement of due care. A plaintiff seeking recovery in cases like this or in analogous cases must show either that the defendant did something which is so obviously dangerous to life and limb as to be at once recognized as such by· all reasonably intelligent persons or that the precautions and safeguards customarily used in the conduct of a similar business had not been taken by the defendant."

[7] The rule announced in the Titus case, supra note 6, has been modified as is apparent from the Sweeney case supra note

6, and from MacDougall v. Pennsylvania Power & Light Co., 1933, 311 Pa. 387, 166 A. 589. The general tort rule in Pennsylvania is that custom is evidence on the question of negligence, but does not fix the standard of care. Maize v. Atlantic Refining Co., 1945, 352 Pa. 51, 41 A.2d 850; Price v. New Castle Refractories Co., 1939, 332 Pa. 507, 3 A.2d 418; Fox v. Keystone Tel. Co., 1937, 326 Pa. 420, 192 A. 116, 110 A.L.R. 1182. It is at least certain that custom is immaterial if the danger should be obvious to reasonable persons. MacDougall v. Pennsylvania Power & Light Co., supra. See Fagan v. Williamsport Lodge, 1949, 361 Pa. 446, 64 A.2d 805.

[8] Restatement, Conflict of Laws, § 380 (2).

[9] For Florida, see Seaboard Air Line Ry. Co. v. Watson, 1927, 94 Fla. 571, 113. So. 716. For Ohio, see Ault v. Hall, 1928, 119 Ohio St. 422, 164 N.E. 518, 60 A.L.R. 128. This case was discussed in the Article by Professor Bohlen previously referred to, supra note 4. Cf. Ribarin v. Kessler, 1946, 78 Ohio App. 289, 70 N.E.2d 107, in which the explanation given by Professor Bohlen about Ault v. Hall was apparently not brought to the attention of the court.

enough evidence to take the case to the jury and support its verdict. Plaintiff testified that he received his injury when this bottle broke in his hand while he was endeavoring to remove the cap. He said, also, that the amount of pressure he exerted upon the bottle was not unusual for the purpose of the removal. He presented an expert to testify that, in his judgment, the bottle was defective. The jury also had before it the method of inspection used to discard defective bottles in the manufacturing plant, and there was some testimony, albeit not very precise, about the number of defective pieces which were found. It is true that there was strong testimony on behalf of the defendant to the effect that there was no defect in the bottle. But, of course, that is a matter which involves the question of whose story is to be believed and it was the jury's job to pass upon it. We think that the sum total of the evidence for the plaintiff was certainly enough to get his case to the jury.

■■ 4. Defendant complains that the plaintiff's expert was no expert at all. We think the point is not well taken. The man testified to experience in handling glass in various types of testing work. It may be granted that he was not as fully experienced in all this as the chief expert for the defendant. But the latter witness was also an employee of the defendant, and the jury was privileged not to believe everything he said. The matter of who may qualify as an expert is pretty much within the discretion of a Trial Judge. We think plaintiff's expert qualifies sufficiently under the tests of experience as found in the Pennsylvania decisions, and, by the express provision of Rule 43(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., that qualifies him as a witness in a federal court.[10]

■ 5. Finally, the defendant urges that, assuming the bottle contained a defect, and that defect was due to the negligence of the defendant, it is not shown that that negligent defect caused the plaintiff's injury. This is the strongest point the defendant makes. His argument is based upon the fact that there is no life history of this bottle given in the plaintiff's evidence. It was not shown when it went from Zanesville, Ohio to Camden, New Jersey; it was not shown when it went from Camden to Florida; what other trips it has had, if any; how long it stayed in this filling station, or who handled it and how. In the absence of such biographical data, defendant says all sorts of catastrophes might have befallen the bottle, which may have left it in a weakened condition, and that the injury may not have come from the defendant's neglect at all. There is something to this argument, clearly. Nobody doubts that to hold a defendant responsible there must be a causal connection between his liability-creating conduct and the plaintiff's harm. Plaintiff's expert witness, however, said that the defect could have caused the breaking which, it is undisputed, was the cause of cutting the plaintiff's hand. There was testimony that there was no apparent defect in the bottle at the time the plaintiff took it from the shelf, dusted it off and tried to open it. He said, with apparent frankness, that he did not make a close examination of the bottle. That frankness may well have been more convincing to the jury than an account of making a detailed inspection while a customer waited outside. We think that if the jury believed that the bottle was manufactured in a negligent fashion and that the bottle when used was in apparent good condition, that is enough to justify a jury in finding that it broke because of the defect, especially when backed up by the expert's testimony that the defect could have occasioned the breakage under the circumstances.

This question of proximate cause is as difficult a one for triers of fact as it is for law students. Events which cause people harm in the day to day world are not observed under the controlled conditions of a carefully organized testing laboratory. The best we can ever hope to get is approximate accuracy. That is true of the conduct of ordinary affairs of life by all of us and it should be good enough for a lawsuit.

The judgment will be affirmed.

[10] Stevenson v. Ebervale Coal Co., 1902, 203 Pa. 316, 52 A. 201; Altman v. Lande, 1925, 84 Pa.Super. 399, 401; cf.

Fraim v. National Fire Ins. Co., 1895, 170 Pa. 151, 32 A. 613, 50 Am.St.Rep. 753.