(17 Misc. Rep. 597)

## GLENN v. WINTERS.

(Supreme Court, Appellate Term, First Department. July 27, 1896.)

NEGLIGENCE—WHO MAY RECOVER FOR.

   One who hires a coach, with horses and driver, to another, is liable for injuries, caused by the defective condition of the coach, to a person riding in it at the invitation of the hirer.

Appeal from First district court.

Action by Frank Glenn, an infant, by his guardian ad litem, against Abram Winters, for personal injuries. There was judgment in favor of plaintiff for $99 damages, besides costs, and defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAMS and BISCHOFF, JJ.

Couch & Murphy, for appellant.

M. E. Harby and Logan, Clark & Demond, for respondent.

DALY, P. J. The plaintiff was injured by the overturning of a coach belonging to defendant, and driven by his employés, and hired by him to a social club for a day's excursion. The plaintiff, a minor, was invited by a member of the club to ride in the coach on the return journey. The questions to be determined by the justice on the evidence were whether the overturning of the coach was caused by its condition when it left the defendant's stable, or by overloading, and the disorderly conduct of the passengers. The finding of the justice was in favor of the plaintiff, on conflicting testimony as to the facts, and is sustained by competent proof. It was proved by two witnesses (Keane and Petty) that one or both hind wheels of the coach dragged before the coach started on the excursion in the morning, and that this was due to want of greasing of the axles. This testimony, if believed, afforded reasonable ground for inferring that ordinary care had not been exercised in preparing the vehicle for the work before it left the defendant's stable. These witnesses were experienced drivers,—one had formerly driven a truck for over 16 years, and the other had driven a coach, off and on, several years, —and they would therefore be intelligent observers of the coach and its running gear. They swore that the attention of the drivers was called to the condition of the wheels. The drivers admitted that they were told that the wheels dragged, but explained it by saying that the brake was applied at the time. Keane and Petty could not have failed to observe the fact, if it were so, and they

testified that they did observe that the brake was not then at the wheel. These witnesses, who were experts, testified that the dragging of one wheel would cause the upsetting of the coach. It was shown that, just before the accident, sparks were seen coming from the wheel. It is questioned by appellant whether the upsetting could be caused by the dragging of a wheel, and, as the witnesses in question had differed as to the wheels which they saw dragging, he argues that the dragging of both wheels would not cause the coach to overturn. The defendant's driver, however, testifies that the coach would tip over if the brake was applied when it began to sway. The application of the brake would cause one or both wheels to drag, and the justice might reasonably find that, if the wheel or wheels dragged from want of greasing, the coach might be equally liable to tip over. The defendant endeavored to show that a swaying motion was given to the coach by disorderly conduct on the part of the passengers who overcrowded it on top. It was conceded that it could carry 30 persons (including the drivers), and that 20 might be seated on top; there being 5 seats, each holding 4 persons. The driver testified that he should judge there were 30 persons on top, but then his opinion was that it could only carry 10 there in safety. This was opposed to the fact as testified to by the other witnesses for defendant, who stated that it would carry 20 on top. The driver's testimony, therefore, was to be taken with some allowance for exaggeration. Opposed to the charge of overcrowding was the testimony of Luttrell and St. George, witnesses for plaintiff, that the passengers on top were all seated comfortably, and there was no crowding. The same conflict is found with respect to the charge of disorder, and the finding of the justice on all these disputed points should not be disturbed.

As the accident to the coach was not caused by the mismanagement of the drivers, no question as to whether they were or were not, while driving for the club on this excursion, the servants of the club, and not of the defendant, can affect the right of plaintiff to recover. The injury sustained was due to the breach of defendant's duty to furnish a reasonably safe machine, in good order for the purpose for which it was hired. For this breach of duty the defendant is liable to a guest of the club, as well as to one of its members, and plaintiff was lawfully on the coach as a guest of a member. The coach was hired by a social club for an excursion, without any stipulation against inviting guests. There were women in the party, and it would be repugnant to reason to hold that for an injury to the wife, family, or friend of a member, there could be no recovery against the owner of the coach under circumstances which would justify a recovery by the member. It might fairly be implied from the hiring of the coach for an excursion that there was an understanding on both sides that it was to be used, not only by members of the club, but by their guests; and the same duty was owing to one as to the other, namely, the exercise of reasonable care in providing a machine fit for the purpose for which it was hired. The defendant would not be liable to a stranger; that is, a person not connected with the club, or a mem-

ber of the club, and not carrying out some right which the club or its members had in using the coach pursuant to the contract. Where a mailcoach was constructed under a contract with the postmaster general, and was delivered and used in the mail service, and was driven by an employé of a party who had a separate contract with the postmaster general for horsing the coach, it was held that the driver could not recover for injury received by the upsetting of the coach owing to some latent defect in its construction, as the coach maker owed him no duty. "Unless we confine the operation of such contracts as this," said Lord Abinger, "to the parties who entered into it, the most absurd and outrageous consequences, to which I can see no limit, would ensue." Winterbottom v. Wright, 10 Mees. & W. 109. "There would be no bounds to actions and litigious intricacies, if the ill effects of the negligence of men may be followed down the chain of results to the final effect." Bank v. Ward, 100 U. S. 195. The maker of a steam boiler was held liable only to the purchaser for want of care or skill in its construction, after delivery and acceptance, and a third person injured by an explosion due to such negligence has no action against the manufacturer. Losee v. Clute, 51 N. Y. 494. A person injured by the fall of a building which had been negligently remodeled by a contractor, and turned over to the owner long prior to the accident, has no cause of action against the contractor. Daugherty v. Herzog (Ind. Sup.) 44 N. E. 457, 458: "If the contractor who erects a house, who builds a bridge, or performs any other work; a manufacturer who constructs a piece of machinery or a steamship,—owes a duty to the whole world that his work or his steamship shall contain no hidden defect, it is difficult to measure the extent of his responsibility, and no prudent man would engage in such occupation upon such conditions. It is safer and wiser to confine such liabilities to the parties immediately concerned." Curtin v. Somerset, 140 Pa. St. 70, 21 Atl. 244. The immunity from liability to a stranger to the contract does not exist, however, in the case of a negligent act imminently dangerous to human life, as where a deadly poison is put up, and sent into the market, labeled as harmless medicine. The seller is liable to any person into whose hands it may fall, and who is injured by it. Thomas v. Winchester, 6 N. Y. 397. But this rule only applies to the sale of an instrument in itself dangerous to human life, as poison, gunpowder, etc. It was held not to apply to the case of the sale of a defective fly wheel, and where such an article exploded, or flew in pieces, while used by a person who had borrowed it from the purchaser, and who was injured by it, he was not permitted to recover from the seller. Loop v. Litchfield, 42 N. Y. 351. In that case the court illustrates the point by the supposed case of the sale of a carriage which breaks down through the negligence of the maker: "It might have been contended with the same propriety ＊ ＊ ＊ that a carriage was a dangerous instrument." A recovery for an injury sustained through the use of a defective machine let for a particular purpose must be confined, therefore, to the lessee, or a person connected with him, in carrying out some right which he had under the contract of hire. The

distinction is alluded to in a late case where a landlord was sued for an injury to a child visiting a tenant, and who was injured through the landlord's neglect to repair a skylight which he might have been under an obligation to repair. As the visitor was not, when injured, upon a part of the premises where she had a right to go, which was a roof used for hanging out clothes, and was not at the time "connected with her [the tenant], i. e. carrying out some right which she herself had," a recovery was denied. Miller v. Woodhead, 104 N. Y. 471, 11 N. E. 57. In the present case the boy injured was a guest of a member of a social club which had hired the coach for an excursion, and was using it as contemplated by the contract of hiring, and therefore carrying out some right which the club and its members had.

Judgment affirmed, with costs. All concur.