## MILESTONE SYSTEM, INC., *v.* KATHERINE GASIOR.

[No. 61, October Term, 1931.]

*Decided January 13th, 1931.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Philip B. Perlman* and *Wirt A. Duvall, Jr.,* for the appellant.

*M. J. Presstman,* with whom was *Sol. C. Berenholtz* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The defendant is a corporation carrying on in Baltimore City the business of letting out for reward passenger automobiles which are delivered to the hirers, who, during the period of the letting, have exclusive possession, control, and management of the automobiles so rented. On July 21st, 1929, the defendant let a Buick sedan of 1928 model to Pete Theodore, who used it to drive a party of five young women from Baltimore to Aberdeen. On the way back, the plaintiff was injured in a fall through the door of the automobile to the highway. She brought suit and recovered a judgment against the defendant, which assigns as the ground for reversal the refusal to grant a prayer taking the case from the jury because there was no legally sufficient evidence of the defendant's negligence, or because the plaintiff had assumed the risk or been guilty of contributory negligence.

The default attributed to the defendant is its alleged negligence in letting to Theodore an automobile with its right back door in a dangerous condition. Because of the defendant's prayer to the legal sufficiency of the evidence, the substance of the testimony which the plaintiff relied upon to establish her cause of action will be stated.

The automobile let was standing on the side of the street. An attendant of the defendant's examined the engine, steering wheel, and brakes, but not the doors. Theodore then took possession of the automobile at the defendant's place of business on the corner of Light and Lombard Streets, and got in the driver's place, and his present wife and another young woman occupied the front seat with him, and two other women got in the back of the automobile. The attendant, who had showed him the automobile, closed the front and back doors, and Theodore drove off to get the plaintiff, the sixth member of the party. Although Theodore had no trouble with the automobile, and neither heard nor was informed of the fact, the testimony of the women is that after the automobile had been driven about two blocks a rattling noise was heard coming from the right rear door. When the automobile had been driven to Eastern Avenue and Dallas Street,

it was stopped for the plaintiff, who opened the right rear door to get in, but had difficulty in closing it until she had slammed the door several times. On their way to Aberdeen the same rattling sound was occasionally noticed by one of the women on the back seat but not by the plaintiff. When Aberdeen was reached the party opened the doors of the automobile, and got out. After an interval of two hours, Theodore sat at the driver's wheel, and the women resumed their places. The plaintiff, as before, was the last one in and had a similar experience. She tried to close the same door several times, but it would not stay shut until she had slammed it hard.

On their return in the daytime from Aberdeen, Theodore left the metaled highway for a short cut by way of an uneven dirt road. The automobile was running about fifteen miles an hour, and the plaintiff was sitting on the edge of the back seat and leaning forward, while talking with the two women in the front, when the automobile struck a rough place in the road, and the right side of plaintiff's body was thrown by the jolt against the door, and her extended arm passed through the open window of the door, which opened under the impact, so that the plaintiff, carried by loss of balance and momentum, fell out of the automobile, and by her hold through its window pulled, as she dropped, the door loose from the body of the automobile, to which it was fastened by hinges, so that the door was left hanging from some remaining attachment at its top.

The automobile was stopped within fifteen or twenty feet of where the plaintiff lay hurt on the roadway, and an examination was made of the door. The witnesses for the plaintiff testified that the spring lock was found not to be in order. The bolt was fast in the lock. When the handle was turned, the bolt stuck in the lock and would not shoot out so as to engage in a keeper until the door was struck several blows on the side.

There was other testimony on the part of the plaintiff that tended to show that the driver had not heard any rattling and neither knew nor was informed of any defect in the automobile; and that, from the time the automobile was de-

livered until the occurrence of the accident, the automobile had not sustained any injury or been in any mishap, nor had it been tampered with by any one; and that the plaintiff had not opened the door by a turn of the handle.

While the defendant could produce no witness to testify to the circumstances of the trip and the accident, it offered testimony which, if believed, would establish that, in the presence of the hirer, an experienced and skilled attendant had made a thorough and customary inspection and test of the doors at the time the automobile was let to Theodore; and, again, when the machine was returned, the right rear door was examined and tested by a competent agent of the defendant, and, on both occasions, the lock was found to be in perfect condition. The other evidence on the part of the defendant was to the effect that it would have been impossible for the door to have been pulled off, and it and the body of the automobile damaged in the manner and to the extent sustained, as a result of such an accident and circumstances as were described by the witnesses for the plaintiff. The defense, therefore, was not that the accident was attributable to a latent defect, which, notwithstanding the exercise of reasonable care, was, not discoverable by an examination which the letter was legally bound and competent to make at the time of the letting, but which, without any reasonable ground for anticipation by the letter, suddenly developed after the automobile had passed into the exclusive possession of the hirer; but that no such defect ever in fact existed. Furthermore, the defense acknowledged the duty of an inspection of the automobile before delivery to the hirer, and attempted to prove its customary performance in the letting at bar. So on the question of primary negligence the inquiry on this record was whether or not the lock was defective, and this defect the proximate cause of the injury; and, if so, did the defendant know, or by the exercise of reasonable care should it have known, that the lock was defective at the time of the letting?

If one engage in the business of letting, for a reward, to the public automobiles to be used and driven by the hirer,

with or without guests or passengers, according to his pleasure, the success of the enterprise depends upon the immediate command of automobiles for instant, safe, and satisfactory use while hired; and there is so much danger involved to the class which hires, and to those who are the occupants of the automobiles they have rented, if the automobiles be not in reasonably safe condition for the normal purposes to which they may forthwith be put while let, that the law, notwithstanding some dissent, casts upon the letters of the use of automobiles the affirmative duty to know that the automobile rented is in fit condition for the purposes for which it is to be at once used. So, if with knowledge, or an absence of knowledge because of a failure on the part of the letter to take affirmative action to examine, with care and skill, the automobile to ascertain if any defects exist which make it unfit for the profitable uses to which the letter designed to put it, the letter rents an automobile with a defect, he becomes liable for any injury resulting from such defect as its proximate cause, not only to the hirer but also to any third person associated with the latter as guest, passenger, or otherwise in the use of the automobile within the contract of letting. *Bohlen, Studies in the Law of Torts,* pp. 70-80; *Beven on Negligence* (4th Ed.), 965; *Glenn v. Winters,* 17 Misc. Rep. 597, 40 N. Y. S. 659; *Hayes v. Phila. & R. Coal & Iron Co.,* 150 Mass. 457, 23 N. E. 225; *Bright v. Barnett,* 88 Wis. 299, 60 N. W. 418; *Denver Omnibus Co. v. Madigan,* 21 Colo. App. 131, 120 P. 1044. See cases collected in 12 A. L. R. 766-798, and 61 A. L. R. 1333-1343. Hence if, while an automobile is being properly used for the purpose for which it was hired, a defect in the automobile works an injury, it then becomes incumbent on the letter to show that the defect was not preventable by any care or skill on his part. This is particularly true where the defect would have been ascertained by a skillful and careful inspection, and the defendant and not the plaintiff was in possession of the automobile until the letting, which would render it difficult for the plaintiff to prove what the defendant would know, with reference to whether or not an examination had been made

and how and when, and what conditions had been found. *Bevan on Negligence in Law* (4th Ed.), 966; *Hyman v. Nye* (1881), 6 Q. B. D. 685-687; *Babbitt's Motor Vehicle Law* (3rd Ed.), 326; *Christie v. Griggs,* 2 Camp. 79.

In the instant case the defendant not only attempted to establish that there had been a careful and skilful inspection before the letting, and another shortly after the accident, but that there never had been any defect in the lock or its operation. On the other hand, the evidence on the part of the plaintiff was legally sufficient for the jury to find that, while the automobile was being carefully used, the injury of the plaintiff was directly caused by a defective lock of the automobile, and that this condition of the lock existed at the time of the letting by reason of some cause intervening after construction, and that either the letter had notice of this condition when the automobile was delivered to the hirer or, if the defendant were actually ignorant of the defective condition of the lock when the automobile was let, this lack of information subsisted because the defendant had failed to make such an inspection as a reasonably careful and skilful person would have made under similar circumstances, so a verdict for the plaintiff could be supported by the testimony, unless there were an assumption of the risk of the defect by the plaintiff or she were guilty of contributory negligence. *Supra; Berry on Automobiles* (4th Ed.), sec. 1433.

2. The defense embodied in the maxim *"Volenti non fit injuria"* has application only where the facts establish that the plaintiff has, by the exercise of an intelligent choice, assented to an act or a condition from which he suffers. There was evidence that the plaintiff had difficulty in closing the door after she had opened it, first, at her home and, next, at Aberdeen, but the door did not open without the handle being turned in the usual manner until the time of the happening of the accident. The plaintiff did not hear, so she swore, the rattling sound made by the door until after leaving Aberdeen, and she further testified that it did not occur to her from what she had observed that there was any danger of the door not remaining fast. From this the court could not say.

as a matter of law, that she knew the existence of the danger and that the risk incurred was obvious to one of her class, so that her remaining in the machine was indisputably an assumption of risk, and left on that issue no facts for the finding of the jury. *Thomas v. Quartermaine* (1887), 18 Q. B. D. 696; *Pollock on Torts* (8th Ed.), 166-171. See *Yockel v. Gerstadt,* 154 Md. 188, 194, 140 A. 40.

3. Before the injury, the plaintiff was next to the closed door of the automobile and sitting on the edge of the seat as she leaned forward to talk to the woman on the front seat. It was while she was in this attitude that she was jolted by a sudden movement of the automobile and thrown against the door, which opened, and she was thrown to the road. It is true that she had put herself in a position which made her more subject to a loss of balance and the thrust of her body against the door than if she had sat against the back of the seat, but the court cannot say as a matter of law that she was guilty of contributory negligence. The facts need not be repeated, but, as they are presented by this record, the action of the plaintiff was not of so prominent and decisive a character under all the circumstances as to leave no room for difference of opinion among reasonable minds that her action was a proximate negligent cause contributing to the accident. *Merrifield v. Hoffberger,* 147 Md. 134, 137, 127 A. 500. Some freedom of movement and position is permitted the occupant of an automobile in motion, and the circumstances here leave the question of contributory negligence a matter of fact for the jury and not of law for the court. *Blashfield's Cyclopedia of Automobile Law,* vol. 2, secs. 9, 12; *Washington etc. Co. v. State,* 136 Md. 103, 111 A. 164; *Mitchell v. Raymond,* 181 Wis. 591, 195 N. W. 855.

As a result of these views, the court of trial committed no error in submitting the case to the jury, and the judgment will be affirmed.

*Judgment affirmed, with costs.*