CHRISTINE SMITH, Joined by V. MORRIS SMITH, as Her Husband and Next Friend, v. BURDINE's, INC., a Corporation.

198 So. 223
Division B
Opinion Filed September 27, 1940
Rehearing Denied November 12, 1940

*Carson, Petteway & Stembler,* for Plaintiff in Error;

*McKay, Dixon & DeJarnette* and *Evans, Mershon & Sawyer,* for Defendant in Error.

CHAPMAN, J.—This case is before the Court on writ of error to a final judgment for the defendant below entered by the Circuit Court of Dade County, Florida. The declaration sought recovery on two counts: (a) upon a breach of an implied warranty of fitness for the use and purposes intended; (b) upon the breach of the express warranty of wholesomeness. On demurrer to each count of the declaration it was contended that the plaintiff, as a matter of law, had no cause of action against the retailer of the article sold to the plaintiff, but the cause of action, if any, was against the manufacturer or wholesaler thereof. The demurrer was overruled and the material portions of the order are, viz.:

"The declaration in this case contains two counts. The first count is based on the theory of 'Implied Warranty.' The second count is substantially the same as the first count, except that it is predicated on the theory of 'Express Warranty.'

"It is alleged in the declaration that the plaintiff on the recommendation of a salesman in the employ of the defendant purchased a lip stick. The salesman at the time and place of sale stated to the defendant that the lip stick so recommended and purchased by plaintiff was 'Grade A' under the pure food and drug law. That in the use of said lip stick by the plaintiff her health was seriously impaired by reason of deleterious or harmful substance therein contained.

From an exhaustive examination of the conflicting au-

thorities involving similar but not the precise question under consideration, this Court is inclined to the view that the selection and statement made by the defendant's duly authorized salesman at the time and place of the sale of the lip stick to the plaintiff amounted in law to an implied warranty."

The case went to trial on pleas: (a) not guilty; (b) that it did not promise as alleged; (c) defendant denies that the lip stick was not reasonably fit and proper to use for cosmetic purposes; (d) defendant denies it knew that a certain lip stick would find its way into the mouth and stomach of one using the lip stick; (e) defendant denied the lip stick was then and there unfit for use as a cosmetic.

The plaintiff offered evidence in support of the material allegations of the declaration and rested her case. The lower court sustained a motion for a directed verdict made by the defendant below on the theory that no evidence had been offered upon which the jury would be warranted in returning a verdict in behalf of the plaintiff below. A motion for a new trial was made and overruled and judgment final entered for the defendant below and an appeal therefrom has been perfected to this Court.

The facts established by plaintiff below are substantially viz.: During the month of August, 1936, plaintiff bought of Burdine's department store in the City of Miami a Tiger Lily lip stick manufactured by Charles of the Ritz which was delivered to the plaintiff in a metal container, the same as purchased by Burdine's, Inc., from Charles of the Ritz. Plaintiff paid $1.00 for the lip stick at the cosmetic counter of Burdine's, Inc. She stated that prior to the purchase she asked for a good brand of lip stick and the saleslady recommended it. "She told me that the lip stick was guaranteed under the pure food law Grade A." "The idea was

always there that I was buying a guaranteed lip stick." "She told me it was a guaranteed lip stick under the pure food law." "They recommended the lip stick and for this reason I bought it."

The lip stick, she stated, was without stickability and after she would eat her lips would be colorless and the color therefrom stained objects touching her lips and some would be found on her teeth and in her mouth and could not be removed; that after using the same for a short time she had digestive trouble, which gradually grew worse; her face was swollen; eyes turned red, and was sick for more than a year and under the treatment of a physician.

Dr. Dyrenforth, a pathologist, testified that he made an analysis of the lipstick in July, 1938, and that the same contained a harmful matter chemically known as meta-xylene-azo-betanapthol, which is a coal-tar derivative. He further testified:

"Q. In what way is it harmful, doctor?

"A. It is harmful as an irritant, in that it is prepared from other things which are definitely harmful. Betanapthol is a chemical which is used as a disinfectant, or an antiseptic, rather, and it is used medically in small amounts as a vermifuge for driving worms out of system, on the mucous membranes. Betanapthol alone is an irritant and in combination with those other substances to make Sudan No. 2, it is without any suspension in the form of a lipstick with a waxy substance, and in some individuals there may be hypersensitivity to coal tar dyes such as this, which might incite an inflammatory reaction. * * *"

"Mr. Carson: All right, go ahead, doctor.

"The witness: This coal tar product, Sudan No. 2, is a definite irritant, although it might produce such irritation in some persons and not in others. It is also related to the

coal-tar products which are known to produce cancer. Specifically speaking, and without trying to go into the chemistry of it too much in detail, these coal-tar products which contain more than one benzine nucleuses as this does, are definitely known to cause irritation to the mucous membrane and to the skin when applied over extended periods. As to the substance itself, it is also related to the other members of this group. There are five altogether. Some of them are more harmful than others, and I judge from the chemical constitution of Sudan No. 2 that it ranks along midway in the most harmful and least harmful of the group. There are five members of this group that are commonly used in producing dye stuffs, and they are known as Sudan One, Two, Three and Four, and Sudan G. This particular substance which is Sudan Two does contain more than one benzine ring in its structure, and on the basis of this they have been judged harmful products, although they might not exert their effects in the same way on different individuals."

Dr. Graves testified that he treated the plaintiff for a period of some fifteen or sixteen months, and the material portion of his testimony is, viz.:

"Q. Did you make any diagnosis from your observation of her, as to the cause of her condition?

"A. My diagnosis was that there was some chemical irritation, very probably from the cosmetics she was using, and in the course of the treatment of her it was advised that they be discontinued and supportive treatment given her. Mrs. Smith at that time had a systemic absorption in that she had a definite nephritis condition of the kidneys, and there had been albumen, and going over my records, as Mrs. Smith had been a patient of mine for several years, and she had never before had any diagnosis of kidney in-

flammation, and the diagnosis at the time was that there was some chemical irritation causing her physical condition. Very probably the condition was due to the cosmetics she was using, which I advised her to discontinue, and the diagnosis was more or less borne out in the rapid clearing up of the cellulitis, after the discontinuance of the use of the lipstick she was using and the other cosmetics she was using. That was the treatment she was put under, together with supportive treatment for her general condition.

"Q. What was her condition after this systemic poisoning had developed with regard to her being able to do her work?

"A. Mrs. Smith was in a highly nervous state and emotionally upset very easily, more than you would expect of a woman of her age and her manner of living, and over a period of months she was kept under observation and the nephritis or kidney condition rapidly cleared up, following the discontinuance of the lipstick, with elimination therapy, that is the cleaning out of the system of the alkalized condition, and supportive treatment.

"Q. It is your definite opinion her condition came from poison in the system?

"A. That was my line of treatment, and from which she recovered.

"Q. With the application of that treatment she improved?

"A. She did.

"Q. She improved immediately after she discontinued the use of this lipstick?

"A. She did."

Pearl Roberts testified as to the health of the plaintiff prior to the use of the lipstick and the poor condition after

the use thereof and is in line with the testimony of Dr. Graves.

The questions to be decided on this appeal, as contended for by counsel for plaintiff in error, are, viz.:

"Is a retailer of package goods liable to a purchaser thereof for damages resulting from injuries sustained from the use thereof by reason of deleterious matter therein on an implied warranty of fitness for purposes intended when he had no control over the manufacture of the article in question, sold it in its original container and purchased the same from a reputable manufacturer?

"Is a retailer of package goods liable to a purchaser thereof for damages resulting from injuries sustained from the use thereof by reason of deleterious matter therein on an express warranty of wholesomeness when the retailer assured the purchaser that same was Grade A under the pure food law, and when the retailer had no control over the manufacture of the article in . question, sold it in its original container and purchased the same from a reputable manufacturer?"

The authorities on the points here involved appear to be in irreconcilable conflict. The case of Berger v. Berger, 76 Fla. 503, 80 So. 296, was a suit to recover on an implied warranty for the sale of lumber, the lumber not being described as of certain quality or specific dimensions but was bought in a pile to be afterwards checked up and was for the purpose of filling a contract with a third person, under the terms of which the quality and specifications of the lumber required were well known to the defendant at the time of the sale and the purchaser with whom the defendant dealt had no opportunity to inspect it, but relied on defendant's knowledge and judgment that the lumber was fit for the purpose intended. It was contended by the de-

fendant that the lumber was not to measure up to any specification, except quantity, while the plaintiff contended that the defendant was advised of and knew of the contract for the purchase of the lumber and that the terms of the contract not only included quantity but specifications and that the lumber could not be used unless the same measured up to the specification. This Court held that where a person contracts to supply an article in which he deals, for a particular purpose for which it is to be supplied, and that the purchaser had no opportunity to inspect the article but relied upon the judgment of the seller, there is an implied condition of warranty that the article is fit for the purpose to which it is to be applied. The Court said (text pp. 511-13):

" * * * The purpose for which the lumber was purchased by the plaintiff from the defendant admits of no dispute. At least the evidence fully warrants the jury's finding on that point; the purchaser had a right to expect a lot of lumber that would meet the specifications of the contract which it held with the other corporation, of the terms of which the defendant was fully cognizant and to fill which he sold the lumber to the plaintiff. There was evidence to show that when the sale was made the plaintiff did not have an opportunity to examine the lumber. The maxim of *caveat emptor* did not, therefore, apply. See Bunch v. Will, 72 Ark. 343, 80 S. W. Rep. 582, 65 L. R. A. 80; 35 Cyc. 399. It is contended that the defendant was not a dealer or manufacturer of lumber, and although he may have known that the lumber was purchased for resale, no implied warranty or condition exists that it was suitable for resale under the particular contract of sale with the third party. But the case made by the declaration and supported by the evidence in this instance is one where an article was not bought for 'the trade' generally, but for a specific purpose

known to the defendant who was a dealer, and sold by him to the plaintiff for the particular purpose, who without having an opportunity to inspect the article sold relied upon the defendant's judgment that the same was suitable for the purpose especially designed.

"The principle according to which the law will imply a condition has been stated in the following words, which Mr. Benjamin says has become classical: 'An implied warranty, or as it is called, a covenant in law as distinguished from an express contract or express warranty really is in all cases founded on the presumed intention of the parties and upon reason. The implication which the law draws from what must obviously have been the intention of the parties the law draws with the object of giving efficacy to the transaction and preventing such a failure of consideration as cannot have been within the contemplation of either side. In business transactions what the law desires to effect by the implication is to give such business efficacy to the transaction as must have been intended at all events by both parties, who are business men; not to impose on one side all the perils of the transaction or to emancipate one side from all the chances of failure, but to make each party promise in law as much, at all events as it must have been in the contemplation of both parties that he should be responsible for in respect of those perils or chances.' Benjamin on Sales (5th ed.), 595."

The rule expressed in Berger v. Berger, *supra,* holding in effect that where a buyer makes known to the seller the purpose for which he buys an article and relies upon the seller's skill and judgment, an implied warranty of fitness for which the article is purchased as a matter of law arises. This rule is expressed in Mariash on Sales, pages 324-5, par. 119, viz.:

"119. WARRANT OF FITNESS FOR PURPOSE. Where a

buyer makes known to the seller the particular purpose for which he buys and relies upon the seller's skill or judgment, a warranty of fitness for purpose arises. It is apparent that there must be a superior knowledge of the goods on the part of the seller, which is the basis of his skill and judgment and the buyer must inform the seller either expressly or impliedly that he is relying upon that skill and judgment. In addition to this there must be actual reliance by the buyer. Where a purchaser buys a 1,600-barrel oil tank he impliedly makes known to the seller the fact that its particular use will be for the storage of 1,600 barrels of oil. If he relies upon the seller in that regard without making private tests of his own, there is an implied warranty that the tank will sustain a pressure of 1,600 barrels of oil. Likewise if a purchaser agreed to buy a marine engine, by the very use of the term 'marine' he makes known to the seller the fact that the engine will be used on a ship, and there will be a warranty that the engine is fit for use on board a vessel and will withstand the vicissitudes of such use. Likewise on a purchase of alcohol for medicinal purposes if this purpose is made known to the seller, there would arise an implied warranty that the alcohol was wholesome and not so denatured as to be unfit for human consumption. The delivery of high-grade denatured alcohol would be a breach of that warranty * * *."

The evidence shows that the plaintiff wanted a lip stick when at the cosmetic counter of defendant's store and the requested article was in a container and could not by the plaintiff be inspected; she requested the saleslady to recommend a lipstick and relying on the saleslady's recommendation "that the lipstick was guaranteed under the pure food law Grade A," plaintiff purchased the same. The purpose or use of a lipstick is common knowledge and the use to

which the same was to be made certainly was known to the defendant.

The rule enunciated by this Court in Berger v. Berger, *supra,* is recognized by Williston on Sales (2nd ed.), Vol. 1, pp. 457-9, par. 235, viz.:

"235. FITNESS FOR A PARTICULAR PURPOSE. The warranty of merchantability is not the only warranty that may be implied on the sale of goods. Where a buyer buys goods for a particular purpose a warranty is sometimes implied that the goods shall be fit for that purpose. * * *

"It should be noticed also that fitness for a particular purpose may be merely the equivalent of merchantability. Thus the particular purpose for which a reaping machine is generally designed is reaping. If it will not fulfill this purpose it is not merchantable. The particular purpose, however, may be narrower; a reaping machine may be desired for operation on rough ground and, though it may be a good reaping machine, it may yet be impossible to make it work satisfactorily in the place where the buyer wishes to use it. The principle already laid down that a manufacturer impliedly warrants his goods to be merchantable includes, therefore, the doctrine sometimes stated in this way—that the manufacturer of goods impliedly warrants that they are reasonably fit for the general purpose for which they are manufactured or sold. And where dealers are subjected to implied warranties the same rule will be applicable to them. * * *."

55 Corpus Juris, pages 762-3, par. 731, treats the implied warranty of fitness of an article thusly:

"731 (b) WARRANTY OF FITNESS. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judg-

ment, whether he be the grower, manufacturer, or not, it is provided that there is an implied warranty that the goods shall be reasonably fit for such purpose. This places an ordinary seller in the position formerly held only by a manufacturer or producer, the English construction of the Sale of Goods Act being to the same effect. In some jurisdictions this is held not to change the common law, but in some other jurisdictions the common law is changed. To bring a sale under this provision it is necessary that the seller be acquainted, expressly or impliedly, with the particular purpose, and that the buyer rely on the skill and judgment of the seller. Under this provision a purchase from a retail dealer in food is held to make known to the seller that the food was to be used for human consumption, and where the buyer may assume that the seller has had an opportunity to examine the article sold, unexplained, that is conclusive evidence of reliance on the seller's skill and judgment, which conclusion is unaffected by the fact that the buyer selects the article from a collection for some reason unconnected with its fitness for food. * * * "

The majority rule as to the fitness of an article for the purpose intended in 24 R. C. L., pages 187-89, par. 459, is expressed, viz.:

"459. FITNESS FOR INTENDED PURPOSE: GENERAL RULE. —It has been sometimes said that a warranty that a chattel is fit for a particular use is ordinarily implied, when it is sold for such a use, and the rule has been frequently announced that though the maxim *caveat emptor* applies to the purchase of a specific article, yet where the buyer orders goods to be supplied and trusts to the judgment of the seller to select goods which shall be applicable to the purpose for which they were ordered, there is an implied warranty that they shall be reasonably fit for that purpose. This exception to

the general rule of *caveat emptor* seems to be somewhat refined and technical at first view, but it is founded in sound reason. * * * Also in the sale of rags to a paper manufacturer to be used in the manufacture of paper, it has been held that there is an implied warranty that they are not unfit for the purpose on account of infection with germs or dangerous contagious diseases. The fact that the defect in the article furnished rendering it unsuitable for the purpose contemplated could have been discovered by the buyer by a careful examination does not relieve the seller from liability or his warranty, if the buyer did not in fact have knowledge of the defect, and it was not so patent as to be unavoidably brought to his attention for as has been said the buyer is not bound to examine, because he had the right to rely upon the judgment of the seller, and to take it for granted the latter has furnished an article answering the terms of the contract. * * * "

The Supreme Court of the United States in the case of Dushane v. Benedict, 120 U. S. 630, 30 L. Ed. 810, 17 Sup. Ct. 696, expressed the rule, viz.: When a dealer contracts to sell goods which he deals in, to be applied to a particular purpose, and the buyer has no opportunity to inspect them before delivery, there is an implied warranty that they shall be reasonably fit for the purpose. It was alleged that there was a breach of implied warranty that certain rags sold were fit to be manufactured into paper, but it developed that the rags were infected with a contagious disease—smallpox—so that the rags so purchased could not be used for manufacture into paper without causing sickness or death of the employees of the buyer. The suit was brought upon the theory of the breach of an implied warranty and on the ground of negligence by the sale of the rags and that the seller at the time knew that the rags were dangerous to those coming

in contact therewith as they had been exposed to smallpox germs. Upon the question of damages it is pointed out that "there was distinct proof, not only of the rags being so infected with the smallpox that they could not be made into paper without injury to the workmen, but also of sums paid by the defendants to support those workmen who had been disabled by the disease; besides evidence that the defendants, in consequence of the injury to their business by the smallpox introduced in the rags, were obliged to run their mills shorthanded, and lost a considerable part of the profitable country trade." The court said that this evidence was competent for the consideration of the jury in view of the lack of more full and definite proof of the amount of damages resulting to the defendants from the unfitness of the rags to be manufactured into paper; that while the incompleteness of the evidence of damage might lessen the sum which the jury could find in the defendant's favor, it did not justify the court in withdrawing the defendants' claim from the jury. See DeWitt v. Berry, 134 U. S. 306, 33 L. Ed. 896, 10 Sup. Ct. 536; George v. Crowder, 287 Fed. 53; The St. S. Angelo Toso, 271 Fed. 245; The St. S. Angelo Toso, 265 Fed. 783; Kansas City Bolt & Nut Co. v. Rodd, 220 Fed. 750.

The existence or non-existence of an implied warranty of fitness for a particular purpose must and necessarily does depend upon whether or not the buyer relied upon his own judgment at the time of the purchase or relied on the skill or judgment of the seller, and this is a question of fact to be determined by a jury under appropriate instructions.

Counsel for defendant in error have cited a number of cases to sustain the ruling of the lower court. These cases have been examined but we find that they treat mostly of suits brought to recover damages for the sale of unwhole-

some food. Some of the cases are based on implied warranties between the retailer and the consumer, while others are based on the negligent manufacture of unwholesome food between the consumer and manufacturer or the buyer from the manufacturer. We have no fault to find with the law cited in these different cases. Many of the cited cases turn on the sufficiency of the testimony.

The case at bar is distinguished from the cases cited in that the evidence adduced by the plaintiff below shows that she did not buy the lipstick by a trade name. She requested of the saleslady at the cosmetic counter a good lipstick and the defendant's employee made not only the selection thereof, but recommended it for the purpose intended. It has been pointed out that the statements in the record made by the saleslady were only "sales talk," but the record here shows a selection and recommendation of the lipstick. The brand of the lipstick and the words that it was Grade A under the pure food Act are not material. The lipstick as shown by the evidence, contained a poisonous substance and the use thereof injured the health of the plaintiff.

The motion for a directed verdict admits not only the facts stated in the evidence adduced, but also admits any favorable conclusion in behalf of the adverse party that a jury might fairly and reasonably infer from the testimony. See Gunn v. City of Jacksonville, 67 Fla. 40, 64 So. 435. In Gravette v. Turner, 77 Fla. 311, 81 So. 476, this Court said:

"When the facts are not in dispute, and the evidence, with all the inferences that a jury may lawfully deduce from it, does not, as a matter of law, have a tendency to establish the cause of action alleged, the judge may direct a verdict for the defendant. But the court should never direct a verdict for one party unless the evidence is such that no view which

the jury may lawfully take of it favorable to the opposite party can be sustained under the law. Where there is room for a difference of opinion between reasonable men as to the proof of facts from which an ultimate fact is sought to be established, or where there is room for such differences as to the inferences which might be drawn from conceded facts, the court should submit the case to the jury for their finding, as it is their conclusion, in such cases, that should prevail, and not primarily the views of the judge. In an action for negligence where there is any substantial testimony from which the jury could find the issues in favor of the plaintiff, a preemptory charge for the defendant should not be given. A case should not be taken from the jury by directing a verdict for the defendant on the evidence, unless the conclusion follows as a matter of law that no recovery can be lawfully had upon any view taken of the facts that the evidence tends to establish. The credibility and probative force of conflicting testimony should not be determined on a motion for a directed verdict. The duty devolving upon the court in reference to directing a verdict on the evidence may become, in many cases, one of delicacy, and it should be cautiously exercised. Gunn v. City of Jacksonville, *supra;* Logan Coal & Supply Co. v. Hasty, 68 Fla. 539, 67 South. Rep. 72; Davis v. Drummond, 68 Fla. 471, 67 South. Rep. 99; Poore v. Starr Piano Co., 68 Fla. 425, 67 South. Rep. 99; King v. Cooney-Eckstein Co., 66 Fla. 246, 63 South. Rep. 659; Hammond v. Jacksonville Electric Co., 66 Fla. 145, 63 South. Rep. 709; Starks v. Sawyer, 56 Fla. 596, 47 South. Rep. 513."

See Talley v. McCain, 128 Fla. 418, 174 So. 841; Duval Laundry Co. v. Rief, 130 Fla. 276, 177 So. 726; Hastings v. Taylor, 130 Fla. 249, 177 So. 621; Tampa Shipbuilding, etc., Corp. v. Adams, 132 Fla. 419, 181 So. 403, 893; Fain

v. Cartwright, 132 Fla. 855, 182 So. 302; Orr v. Avon Florida Citrus Corp. 130 Fla. 306, 177 So. 612.

Judgment appealed from is reversed and a new trial granted.

WHITFIELD and BUFORD, J. J., concur.

THOMAS, J., agrees to conclusion.

TERRELL, C. J., and BROWN, J., dissent.

BROWN, J. (dissenting).—I must dissent upon the authority of the following cases: Woolworth v. Wilson, 74 Fed. (2d) 439; Travis v. L. & N. R. Co., 183 Ala. 415, 62 So. 851, 854; Linker v. Quaker Oats Co., 11 Fed. Supp. 794; Kirkland v. Great Atlantic & Pacific Tea Co. (Ala.), 171 So. 735; Dothan v. Chero-Cola Bottling Co., 16 Ala. App. 639, 80 So. 734; Howard v. Jacob's Pharmacy (Ga.), 189 S. E. 373; Scruggins v. Jones (Ky.), 269 S. W. 743; Kroger Grocery Co. v. Lewelling (Miss.), 145 So. 726; Lipari v. National Grocery Co., 198 Atl. 393; Aronovitz v. Woolworth Co., 236 N. Y. Supp. 133; West v. Emanuel (Pa.), 47 Atl. 965; Ellis v. Montgomery & Crawford (S. C.), 200 S. E. 82; Pennington v. Cranberry Fuel Co., 186 S. E. 610. There is a later New York case, Foley v. Liggett & Myers, 241 N. Y. Supp., which is at variance with the above cited Aronovitz case, but this departure appears from the opinion to be due to a statute, Section 96 of the New York Personal Property Law. It seems from the above cases that negligence and not warranty is the true ground of liability in a case such as this.