75 So.2d 774 (1954)
SOUTHERN PINE EXTRACTS COMPANY, a corporation, Appellant,
v.
James BAILEY, Appellee.
Supreme Court of Florida. En Banc.
October 8, 1954.
Rehearing Denied October 27, 1954.
Caldwell, Parker, Foster & Wigginton, Tallahassee, for appellant.
Bates, Lowry & Keeter, Scruggs & Carmichael and J.R. Lowry, Gainesville, for appellee.
MATHEWS, Justice.
The appellee lost an eye from the use of dynamite in splitting stumps which he sold to the appellant. The appellee was an independent contractor. The appellant bought dynamite caps and fuses which it *775 sold to the appellee with knowledge of its quality and strength.
The complaint, among other things, contained the following:
"That because of the nature of the operations performed by the Plaintiff, the Defendant procured and sold to the Plaintiff dynamite, dynamite caps and dynamite fuse for use by the Plaintiff in the splitting and preparation of stumps owned by the defendant; the quality and strength of such dynamite, dynamite caps and dynamite fuse being prescribed and determined by the Defendant;
"That Defendant knew the nature of the requirements of Plaintiff concerning dynamite, dynamite caps and dynamite fuse, and Plaintiff relied upon the selection and recommendation of Defendant and purchased from Defendant all dynamite, dynamite caps and dynamite fuse used by him in his business;

* * * * * *
"That during the month of March, A.D. 1951, Defendant, by warranting that a certain quantity of dynamite, dynamite caps and dynamite fuse was then reasonably fit and proper to be used for the purpose of blasting and splitting stumps, sold and delivered the same to the Plaintiff to be used for the purpose aforesaid;

* * * * * *
"That in truth and in fact the said dynamite, dynamite caps and/or dynamite fuse was not then and there reasonably fit and in such condition so as to be used by the Plaintiff for the purpose for which it was sold, to-wit: splitting and preparing stumps for Defendant;

* * * * * *
"* * * the Defendant did carelessly and negligently sell to Plaintiff dynamite, dynamite caps and/or dynamite fuse which were not then and there reasonably fit for the purpose for which they were sold;
"That although Plaintiff did, on or about the 14th day of March, A.D. 1951, use the said dynamite, dynamite caps and dynamite fuse, in accordance with the directions and specifications of the Defendant, and without the same having been subjected to any material changes from the original condition in which it was received by Plaintiff, except to prepare the same for use in accordance with the directions and specifications of the Defendant, * * *.
"That as a direct and proximate result of the said dynamite, dynamite caps and/or dynamite fuse failing to function properly, as the same was warranted, either expressly or impliedly, by the Defendant, and/or the carelessness and negligence of Defendant, Plaintiff was seriously, painfully and permanently injured and disabled, * * *." (Emphasis supplied.)
The answer of the defendant, appellant here, contained the following:
"Any injuries sustained or suffered by plaintiff at the time and place and on the occasion mentioned in the complaint were caused in whole or in part, or were contributed to, by the negligence or fault or want of care of the plaintiff, and not by any negligence or fault or want of care on the part of this defendant." (Emphasis supplied.)
The trial was had before a jury and they returned a verdict for $900 for the appellee. Motion for new trial was made by appellant on several grounds and by appellee upon the ground that the verdict was inadequate. The Court denied the motion of the appellant and granted the motion of appellee for new trial upon the question of damages only.
As shown by the record the suit was originally brought upon two theories; (1) res ipsa loquitur, and (2) conditional implied warranty in which was injected the question of negligence. It is alleged that the defendant assumed the burden or duty of giving to the plaintiff special instructions of the dangerous instrumentality for use in a particular undertaking. At the conclusion of the taking of testimony the appellee, plaintiff below, waived the theory or doctrine of res ipsa loquitur and relied solely upon the other allegations contained in the complaint.
*776 The record shows that the appellant purchased, in original containers, dynamite, dynamite caps and dynamite fuses and sold such material to the independent contractors in the same original containers to be used for blasting and splitting pine stumps.
The appellant strongly urges that the doctrine of implied conditional warranty does not apply. Dynamite is dangerous and everyone knows it to be dangerous. Whether or not it is safely used for a given purpose depends upon the user complying with the instructions given to him for its use. Great care and caution is necessary in using this known dangerous commodity.
The testimony in this case shows that special instructions for use for the purpose intended were given by the Foreman of the appellant and he was a person who represented the appellant in dealing with the materials in question. There is some conflict in the evidence as to whether he told the appellee that the length of the fuses should be between eight and ten inches or should be between twelve or sixteen inches. This conflict in the evidence may be material because such conflicts were jury questions.
Mr. Brock, the Foreman, was called as a witness for the appellee. He was the man who sold the material in question to the appellee and who had charge of storing such material for the appellant. He was familiar with dynamite and the materials involved in this case. He went into the woods with appellee and gave him special instructions as to how the material should be used for a given purpose. The witness Brock knew the appellee and knew, or should have known, of his limited education and knowledge concerning the use of these dangerous commodities. The record is silent as to any instructions given by Brock concerning the time when a fuse should be used and the proper handling of such fuses after they were cut. There is some conflict in the testimony, not only as to the length of the fuses, but also as to who had charge of the fuses and the degree of care taken by the appellee after the smaller lengths were cut from the main fuse. Such conflicts were submitted to the jury. In submitting the case to the jury, among other things, the Court said:
"Now, under the particular circumstances of this case, gentlemen, if the plaintiff is to recover in this case he must do so upon the basis of what is known as a conditional implied warranty. * * * It appears that the company kept a supply of dynamite, caps and fuse on hand at their plant which they had selected for use in their business, and that they sold it to this plaintiff for that use, and that in doing so they gave to him a conditional warranty that the dynamite, fuse and caps were proper explosives to use in that particular business provided that he used them according to their instructions and took care of the dynamite, caps and fuse while it was in his possession in manner and form as he was directed to do, that is, to keep it dry and keep it so that it would not be injured by weather conditions or other conditions which he could prevent from happening by taking care of these articles in manner and form as he was directed by the company to do in connection with its possession and use." (Emphasis supplied.)
This case is different from that of Sencer v. Carl's Market, Inc., Fla., 45 So.2d 671, which involved the sale of food products, namely, sardines, in sealed packages or cans to the consuming public. The injuries were sustained because of unwholesome or deleterious substances unfit for human consumption. The sardines in the can were not dangerous in themselves. We held in that case that when food products were sold to the consuming public in sealed packages or cans, there was an implied warranty that the food was fit for human consumption without any specific instructions. In this case the implied warranty was that the dynamite caps and fuses were fit for the particular purpose on the condition that the user complied with specific instructions.
The same is true in the case of Lambert v. Sistrunk, Fla., 58 So.2d 434, concerning the implied warranty of a ladder which *777 broke while being used. Everyone knows what a ladder is and it is not dangerous in itself and requires no specific instructions.
In the case of Smith v. Burdine's, Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115, the ordinary consumer did not know and was not called upon to know the ingredients of the lipstick. It was sold with the implied warranty that it was safe to use as a lipstick, and no one could know the ingredients of the lipstick without a chemical analysis. The consuming public was not called upon to make a chemical analysis of the product before using it as a lipstick. In the case at bar the implied warranty was with reference to a known dangerous commodity and the implied warranty and special instructions was that it was proper to use for the particular purpose provided it was used according to instructions given by the seller.
In passing upon the motions for new trial, the Court denied the motion of the appellant without comment and granted the motion of the appellee, and in his order stated:
"The two motions will be considered together, and the Motion of Defendant is hereby overruled and denied.

* * * * * *
"The jury having found the Plaintiff suffered the aforesaid injuries because of the negligence, and found that the Plaintiff was entitled to damages therefor, a fair and reasonable amount of damages should have been allowed. Nine hundred dollars is certainly meager damages to be allowed this Plaintiff for the loss of his eye and the other injuries he suffered according to the testimony. The jury assuredly had their financial sights too low when they arrived at a figure of nine hundred dollars for an eye, leaving out of consideration the other injuries of the Plaintiff. * * *"
This record discloses that the foreman for the appellant was experienced in using the instrumentalities involved and the particular purpose for which such instrumentalities were to be used. He went into the woods with the appellee and there was testimony that he gave to the appellee special instructions with reference to the use of such instrumentalities for the particular purpose which were different from the printed instructions of the manufacturer. There is testimony in the record that the appellee followed the instructions given to him by the foreman for the appellant. It is alleged that these instructions were carelessly and negligently given; and as a result thereof and by following such instructions, the appellee lost the sight of his eye.
It may be that the appellant was under no duty to give special instructions but it was testified to that he did give special instructions different from the instructions given by the manufacturer. Appellant cannot assume the duty or responsibility of giving special instructions different from the instructions given by the manufacturer and then escape liability when injury results because it voluntarily assumed to give such different instructions for a particular use to accomplish a particular purpose.
This case demonstrates that liability in cases of this kind must be determined from the facts pleaded and proven in each case.
There is a presumption that the order on the motions for new trial was correct. We have carefully considered this record and each of the assignments of error and the appellant has failed to overcome this presumption and make it clearly appear that any reversible error was committed. See Brinson v. Howard, Fla., 71 So.2d 172.
Affirmed.
TERRELL, SEBRING and HOBSON, JJ., concur.
ROBERTS, C.J., and THOMAS and DREW, JJ., dissent.