**Hildur CLARKSON and John L. Clarkson, her husband, Appellants,**

**v.**

**HERTZ CORPORATION, Appellee.**

**No. 17414.**

United States Court of Appeals
Fifth Circuit.

April 23, 1959.

Rehearing Denied June 5, 1959.

---

Henry Burnett, Miami, Fla. (Fowler, White, Gillen, Yancey & Humkey, Miami, Fla., on the brief), for appellants.

William M. Hoeveler, Miami, Fla. (Knight, Smith, Underwood & Peters, Miami, Fla., on the brief), for appellee.

Before RIVES and TUTTLE, Circuit Judges, and SIMPSON, District Judge.

TUTTLE, Circuit Judge.

This is an appeal from an order granting a motion for summary judgment in favor of the defendant, an automobile rental company, in a suit for damages to the wife of the renter resulting from an alleged defect in the rented car.

The pleadings, motions, interrogatories and depositions before the court when it granted the motion, stated most strongly for the appellant, showed:

Mrs. Clarkson and her husband were driving at a proper speed, 45 to 50 miles an hour along a good highway from Fort Myers towards Naples, Florida, in a rented current model Oldsmobile automobile, which they had driven some 300 miles since he first rented it some two weeks earlier. He was following 100 yards behind another automobile. When the vehicle slowed down Clarkson applied his power brake in a proper manner, but instantly his car veered to the left; he pumped the brake and turned his steering wheel to the right; the car continued to swing across the highway and headed back in the opposite direction; it ran onto the shoulder and then turned upside down down a bank, injuring Mrs. Clarkson and giving rise to Mr. Clarkson's derivative action. On the highway there appeared to be a skid mark leading to the left hand rear wheel from the point where Clarkson first applied the brake until the car left the highway; there also appeared marks of the front wheels, indicating that, though turned towards the right, they had been dragged to the left; Clarkson concluded from

this that his left hand rear brake had locked, and that this had swung the car around. The defendant had given the car its normal 5,000 miles inspection, including inspection of the brakes immediately after buying the car three months previously, but had not inspected the brakes subsequently thereto. The speedometer showed approximately 4,000 miles at the time of the accident. The regular 1,000 mile inspection did not include a brake inspection and no records were in possession of the Hertz Company to show it had been performed.

The plaintiffs sued for the injury in two counts: breach of contract and negligence. The contract count asserted that there was an express or implied warranty that the vehicle "was fit for normal and customary usage," that in point of fact there was a breach of this warranty in that the brake was defective.

The negligence count asserted that "the defendant was guilty of carelessness and negligence * * * in that said vehicle was unsafe for normal and customary operation on the public highways as a result of the defective brake mechanism; that the defendant knew, or, in the exercise of reasonable care, should have known of said defective condition of said motor vehicle."

Appellants have cited no Florida case for the proposition that either a retail seller of an article or a rental agency is bound as an insurer against defects in the article sold. A special situation arises when one asks for and receives from a retailer of foods or cosmetics an article recommended by the retailer as fit for human use. See Smith v. Burdine's, Inc., 144 Fla. 500, 198 So. 223, 131 A.L.R. 115. Cases are cited for the proposition that a vicarious liability exists without privity of contract when a manufacturer who makes an article whose use can make it dangerous if not manufactured with care fails to exercise reasonable care in the adoption of a safe plan or design. Matthews v. Lawnlite Company, Fla., 88 So.2d 299. Such liability is sometimes spoken of by the Florida courts as arising from implied warranty. See discus-

sion of this theory of liability in Blanton v. Cudahy Packing Co., 154 Fla. 872, 19 So.2d 313, 315.

We have repeatedly recognized the existence of this kind of liability on the part of a manufacturer under the Florida decisions as a vicarious tort liability akin to that announced in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. See Aerodex, Inc. v. American International Insurance Co., S.A., 5 Cir., 265 F.2d 290, and Laird v. Air Carrier Engineering Service, 5 Cir., 263 F.2d 948.

■ We think it immaterial whether such liability be considered as arising by implied warranty or under concepts of tort law, because in any event, in absence of any contract cases establishing any higher standard of care, the duty on the party to be charged remains one of due care. It is clear from the latest decision of the Florida Supreme Court on this subject that it is merely a question of ordinary negligence. In Yarbrough v. Ball U-Drive System, Fla., 48 So.2d 82, 83, the court reversed a judgment on a directed verdict for the defendant where it was shown that a rented automobile's drive shaft became disconnected and caused a wreck. The court, although saying that "where one engages in the business of renting automobiles for a price to persons who will do their own driving he represents that the vehicles are in good mechanical condition," reversed the judgment for a jury determination whether the evidence, aided by the doctrine of res ipsa loquitur warranted a finding of negligence. The court did not hold that the obvious unfitness was a breach of any implied warranty of fitness, and thus entitled the plaintiff to a judgment without proving negligence.

■ In the case before us, it is quite apparent that there is no affirmative proof before the court which, if believed in toto, as it must be for the purpose of summary judgment, would support a finding of negligence on the part of the defendant. This is so because there is no more than an inference that the wreck

was caused by a defective brake, or that if the brake was defective such defect existed when the defendant turned it over to plaintiffs rather than being a defect that resulted from improper manufacture and which caused the malfunction just at the moment of the accident, or that even if there was a defect when the car was delivered to plaintiff, it was one which would have been discoverable upon inspection. Moreover, there is no evidence from which a jury could infer that the regular 5,000-mile inspection made by defendant was less than was required under the circumstances. In the field of speculation the case somewhat resembles Smith v. General Motors Corp., 5 Cir., 227 F.2d 210, and McNamara v. American Motors Corp., 5 Cir., 247 F.2d 445.

Appellants contend, however, that the doctrine res ipsa loquitur should be invoked here to assist them in making out a prima facie case of negligence. The doctrine has most recently been defined for Florida by the Supreme Court in Yarbrough v. Ball U-Drive System, supra, where in 48 So.2d on page 83 the Court said:

"As we all know, the doctrine of res ipsa loquitur is merely a rule of evidence. Under it an inference may arise in aid of the proof. Establishment of the facts that the instrument causing the injury was in the sole control of the defendant, that the occurrence would not have happened in the ordinary course of events had there been proper care on the defendant's part, provides evidence that the injury sprang from the defendant's negligence. We are not troubled with the absence here of the element of exclusive control by the defendant of the thing causing the injury, for this case, in our opinion, falls within the exception to the rule like those instances where injuries have resulted from the explosion of bottles containing carbonic acid gas that had passed from the possession of the vendor to the possession of the consumer. From the nature of appellee's 'U-drive-it' business representatives of the renter do not accompany the customers to whom cars are rented. Appellee had control of the truck in question up to the very time it was entrusted to Yarbrough, and that satisfied this requirement of the rule."

We think it quite clear that a clear case for the application of this doctrine would be shown if, upon proof that a plaintiff bought a new automobile from a dealer who proved that he had not touched the mechanism after receiving it from the manufacturer and that while driving it away in a normal manner the driving shaft fell apart and injured him, he thereupon sued the *manufacturer*. This would be so because the manufacturer would be the person whose failure to use proper care could properly be assumed to be the cause for this occurrence which, but for some such negligence would not be expected to occur. This is the doctrine of McPherson v. Buick Motor Co., supra.

Normally, the doctrine cannot be availed of against the dealer unless he has interjected himself into the picture by performing acts that either intentionally or by error modify the article after its manufacture. So, too, with a renter of automobiles. Unless it has been first affirmatively shown that the renter is *the person without whose negligence* "the occurrence would not have happened in the ordinary course of events" he does not fit into the rule as announced by the Florida court.

As we have observed, it is impossible to infer that what caused the left rear wheel to grab and freeze was a want of care owed by defendant company or care owed by the manufacturer, or, entirely without the driver's knowledge, of some casualty of the road. This is not, then, something which the court can say would not have happened if Hertz had discharged its duty.

The judgment is affirmed.

RIVES, Circuit Judge (dissenting).

The value of the right of jury trial preserved by the Seventh Amendment to the Constitution of the United States, in suits at common law in federal courts including diversity cases,[1] is difficult to over-estimate. That constitutional right is impaired, I think, by this decision.

In addition to the facts very fairly stated in the majority opinion, I would mention a few matters. There was evidence from which any mistreatment of the car after its rental to the plaintiff could be excluded. The accident itself was the first instance of anything unusual about the operation of the automobile while it was in the plaintiff's possession. Any bad weather or highway defect could be excluded. The accident occurred on a clear day and on a dry pavement. Before the rental of the automobile to the plaintiff on March 8, 1956, its last previous rental had been to a Mr. Reistenberg who had the car from February 8, 1956, until March 5, 1956, nearly a month. When rented to the plaintiff, the car had been driven 3621 miles without inspection other than an inspection immediately after its purchase [by the defendant] some three months earlier.

In my opinion, reasonable inferences favorable to the plaintiff's recovery were open to the jury. Regrettably the accident and damage had occurred, and it was inevitable that the loss had to fall on someone. The jury could have found the plaintiff wholly free from fault. If so, the fairer rule, and the one most consistent with a sound public policy, is to impose on the defendant renter the risk of the safety of the automobile.

If, however, the defendant is not subject to that strict liability, clearly the evidence was sufficient to authorize the jury to find that the brake was defective and that the defendant was negligent in failing to inspect the car before renting it to plaintiff. If the court would not permit the jury to find a duty of inspection after the car had been driven 3621 miles, at just what mileage would that duty arise? Is that not necessarily a matter for the jury to decide? The operation of an automobile is inherently dangerous, unless diligence is exercised both in its manufacture and in its inspection and maintenance. That is a matter of common knowledge, and is settled by the long line of decisions following the famous case of MacPherson v. Buick Motor Co., 1916, 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696. Florida's full sympathy with the MacPherson doctrine is shown by the cases discussed in the majority opinion. Few problems have received wider discussion, and I shall not re-thresh old straw, but am content to agree with Dean Prosser's statement of the rule adequately supported by the authorities which he cites:

"* * * The lessor of an automobile is liable to a guest in the vehicle or a person run down on the highway, not only if he knows that the car is dangerously defective at the time it is supplied,[58] or that the person entrusted with it is incompetent to handle it,[59] but also if he merely fails to make reasonable inspection to discover possible defects before turning it over.[60]"

"[58] Lynch v. Richardson, 1895, 163 Mass. 160, 36 N.E. 801, 47 Am.St. Rep. 444; Trusty v. Patterson, 1930, 299 Pa. 469, 149 A. 717; Ferraro v. Taylor, 1936, 197 Minn. 5, 265 N.W. 829. Cf. Griffin v. Payne, 1920, 95 N.J.L. 490, 113 A. 247; Bryson v. Hines, 4 Cir., 1920, 268 F. 290, 11 A.L.R. 1438.

"[59] See infra, p. 513.

"[60] White v. Steadman, [1913] 3 K.B. 340, 82 L.K.J.B. 846 (passenger); Milestone System v. Gasior, 1931, 160 Md. 131, 152 A. 810 (same); Mitchell v. Lonergan, 1934, 285 Mass. 266, 189 N.E. 39 (same); Collette v. Page, 1921, 44 R.I. 26, 114 A. 136, 18 A.L.R. 74 (collision); Saunders System Birmingham Co.

1. See authorities collected in my dissent in Atlantic Coast Line R. Co. v. Futch, 5 Cir., 263 F.2d 701.

v. Adams, 1928, 217 Ala. 621, 117 So. 72, 61 A.L.R. 1333 (same); Vaughn v. Millington Motors Co., 1929, 160 Tenn. 197, 22 S.W.2d 226 (same)."

Prosser on Torts, 2d ed., § 84, p. 511.

I respectfully dissent.

On Petition for Rehearing.

PER CURIAM.

It is Ordered that on petition for rehearing the request for an extension of ten days of the period within which the petition may be filed is hereby granted. The petition for rehearing is denied.

RIVES, Circuit Judge, dissenting in the denial of the petition for rehearing.